## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY

DEBBIE BLURTON and TRAVIS O'BRIEN, individually and on behalf of all others similarly situated,

          *Plaintiffs*,

     v.

HAIER US APPLIANCE SOLUTIONS, INC. d/b/a GE APPLIANCES,

          *Defendant*.

Case No. **3:24-cv-225-GNS**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs Debbie Blurton and Travis O'Brien ("Plaintiffs") file this class action complaint on behalf of themselves and all others similarly situated, by and through the undersigned attorneys, against Defendant Haier US Appliance Solutions, Inc. d/b/a GE Appliances ("Defendant" or "GE Appliances"). Plaintiffs allege the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief.

## NATURE OF THE CASE

1.     This case involves Defendant's design, manufacture, marketing, and sale of refrigerators with a faulty design or manufacturing process that results in defective compressors (the "Compressor Defect"). The Compressor Defect occurs in refrigerators designed, manufactured, marketed, and sold by Defendant ("Class Refrigerators" or "Refrigerators"). The Compressor Defect prevents the refrigerators from cooling consumers' food and beverages, ultimately causing the food and beverages to spoil and rendering the refrigerators unusable for

their intended purpose. The Compressor Defect usually manifests shortly after purchase and well before the end of the anticipated useful life of the Class Refrigerators.

2.      When the Compressor Defect manifests and the Class Refrigerators are no longer capable of cooling the food and beverages inside, Defendant's representatives charge diagnostic fees, which can range from $100 to $300, just to inform consumers that the Compressor Defect has manifested. In order to restore the intended functionality of their Class Refrigerators, consumers are forced to pay for replacement parts plus labor costs, which can range from $1,100 to $1,800, despite the compressor and related labor being covered under Defendant's warranty.

3.      Additionally, consumers often experience additional issues, including: (1) waiting long periods of time for replacement parts because Defendant does not have either the parts available or repair technicians who can perform the repairs; and/or (2) experiencing additional compressor failures because the replacement compressors also contain the Compressor Defect.

4.      In addition to being defective, the replacement compressors also cause new issues, such as Class Refrigerators becoming significantly noisier. When consumers report the excessive noise to Defendant, they are informed that additional noise is "normal" despite it not being present before the compressor replacement.

5.      After consumers pay for the replacement compressors and observe that they are also defective, consumers are forced to purchase new refrigerators so their food and beverages do not continue to spoil.

6.      Upon information and belief, at all times Defendant was aware of the Compressor Defect. Specifically, Defendant is a large manufacturer of consumer products and tests its products before they are sold to the public. Moreover, numerous class members contacted Defendant or its authorized agents regarding the Compressor Defect shortly after the Class Refrigerators were

available for purchase. Numerous consumers also posted complaints about the Compressor Defect on well-known consumer review websites, which Defendant monitored. Despite its knowledge of the Compressor Defect, Defendant failed to disclose to consumers that Class Refrigerators were manufactured with the Compressor Defect.

7.     Defendant's marketing is false and misleading in that a reasonable consumer would believe that the Class Refrigerators are capable of keeping food and beverages cold because that is the obvious purpose of a refrigerator. Moreover, Defendant's marketing and advertising are false and misleading in that a reasonable consumer would believe that the Class Refrigerators are durable and will last for a decade or more.[1]

8.     Accordingly, Plaintiffs bring this action to redress Defendant's violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*; the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196 *et seq.*; and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3), as well as for breaches of express and implied warranty, fraud, negligent misrepresentation, and unjust enrichment.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States and pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and

---

[1] See https://www.consumerreports.org/cro/news/2009/03/by-the-numbers-how-long-will-your-appliances-last-it-depends/index.htm (last visited March 20, 2024).

(iii) there is minimal diversity because at least one Plaintiff and Defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391 because Defendant's headquarters are in this District. Further, Defendant advertised in this District and received substantial revenues and profits from the sale of Class Refrigerators in this District therefore, a substantial part of the events or omissions giving rise to the claims occurred in this District. Defendant transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district.

## PARTIES

**Plaintiff Debbie Blurton**

11.     Plaintiff Debbie Blurton ("Plaintiff Blurton") is a resident of California.

12.     In January 2022, Plaintiff Blurton shopped at A-1 Appliance and viewed a display model GE refrigerator. Plaintiff Blurton observed stickers on the display model, advertising the refrigerator's features, including its Keurig capabilities. Plaintiff Blurton also discussed the refrigerator's features with a sales representative authorized to sell GE's refrigerators. Neither the sticker advertisements nor the sales representative disclosed the Compressor Defect to Plaintiff Blurton. As a result, Plaintiff Blurton decided to purchase the Class Refrigerator.

13.     Plaintiff Blurton purchased a Class Refrigerator from A-1 Appliance, Model No. CFE28UP2MS1, for her household's personal use.

14.     Plaintiff Blurton had the Refrigerator installed, maintained and repaired consistent with GE Appliance factory recommendations, and at all times used and maintained the machine consistent with expected use (i.e., storing food and beverages) for a household refrigerator.

15.    Approximately two years after receiving her Class Refrigerator, Plaintiff Blurton heard clicking noises coming from her Refrigerator. She then noticed that her Refrigerator was failing to keep food and beverages at an appropriately cold temperature, and began to experience spoilage of her food and beverages.

16.    Plaintiff Blurton contacted a local repair company, GearUp Appliance Repair, who sent a repairperson to Plaintiff Blurton's home. The repairperson diagnosed the problem as compressor failure. Plaintiff Blurton then contacted A-1 Appliance to schedule an appointment with a GE technician, but was informed that it would be at least three days until a GE technician could service her Class Refrigerator. Because Plaintiff Blurton needed a working refrigerator, Plaintiff Blurton had GearUp Appliance Repair replace the defective compressor. Although Plaintiff Blurton's Class Refrigerator was under warranty, the repairperson charged her $903.73 for the repair.

17.    Following the repair visit, Plaintiff Blurton contacted Defendant to request a refund for the repair, but Defendant denied her request.

18.    In addition to the charges for the repair visits and replacement parts, Plaintiff Blurton experienced lost food in an amount of approximately $200.

19.    Plaintiff Blurton has suffered injury in fact and lost money as a direct result of the Compressor Defect.

20.    Had Plaintiff Blurton known or otherwise been made aware of the Compressor Defect and Defendant's inability to cure it, Plaintiff would not have purchased the Class Refrigerator or otherwise would have paid significantly less for it.

**Plaintiff Travis O'Brien**

21.    Plaintiff Travis O'Brien ("Plaintiff O'Brien") is a resident of Virginia.

5

22.     Plaintiff O'Brien researched Defendant and its Refrigerators on the internet before deciding to purchase his Class Refrigerator.

23.     Plaintiff O'Brien also shopped at Home Depot and Best Buy and discussed GE and its competitors. The sales representatives, who were authorized to sell GE's refrigerators, informed Plaintiff O'Brien that GE employed more technicians than its competitors. Plaintiff O'Brien understood this to mean that in the event he needed to have repairs done, he would receive timely warranty repairs from experienced professionals. As a result, Plaintiff O'Brien decided to purchase the Class Refrigerator.

24.     In February 2021, Plaintiff O'Brien purchased a Class Refrigerator from Best Buy, Model No.: GYE22GMNES, for his household's personal use. Plaintiff O'Brien received the refrigerator around August 2021 and installed it in his new home on February 16, 2022.

25.     Plaintiff O'Brien had the Refrigerator installed, maintained and repaired consistent with GE Appliance factory recommendations, and at all times used and maintained the machine consistent with expected use (i.e., storing food and beverages) for a household refrigerator.

26.     Approximately two years after he installed his Class Refrigerator, Plaintiff O'Brien noticed that his Refrigerator was failing to keep food and beverages at an appropriately cold temperature, and began to experience spoilage of his food and beverages.

27.     Plaintiff O'Brien contacted Defendant regarding his Refrigerator and Defendant sent a repairperson to Plaintiff O'Brien's home. The repairperson diagnosed a compressor failure and informed Plaintiff O'Brien that his Refrigerator was irreparable and that it would cost nearly as much as the price of a new refrigerator to attempt to fix it.

28.     Following the visit, Plaintiff O'Brien contacted Defendant to obtain a replacement refrigerator, but Defendant denied his request.

29.     As a result, Plaintiff O'Brien was forced to pay for a new refrigerator in the amount of $1,821.67.

30.     Defendant purportedly offered Plaintiff O'Brien a $200 rebate on the purchase of a new refrigerator and a check in the amount of $100 for lost food, but as of the date of this Complaint, Plaintiff O'Brien has not received said rebate or check.

31.     In addition to the charges for the replacement refrigerator, Plaintiff O'Brien experienced lost food in an amount of approximately $150.

32.     Plaintiff O'Brien has suffered injury in fact and lost money as a direct result of the Compressor Defect.

33.     Had Plaintiff O'Brien known or otherwise been made aware of the Compressor Defect and Defendant's inability to cure it, Plaintiff would not have purchased the Class Refrigerator or otherwise would have paid significantly less for it.

**Defendant**

34.     Defendant Haier US Appliance Solutions, Inc., which does business as GE Appliances, is a Delaware corporation with its headquarters located at 4000 Buechel Bank Road, Louisville, Kentucky 40225.

35.     Defendant manufactures, markets, advertises and sells home appliances, including refrigerators, throughout the United States, including in California and Virginia.

<u>**TOLLING OF STATUTES OF LIMITATIONS**</u>

36.     Any applicable statute(s) of limitations have been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein.  Plaintiffs and the members of the Class could not have reasonably discovered the true, latent nature of the Compressor Defect until shortly before this class action litigation was commenced. Indeed, none of the Plaintiffs discovered

the Compressor Defect, and could not have discovered it through reasonable diligence, until shortly before this litigation was commenced.

37.     Defendant was and remains under a continuing duty to disclose to Plaintiffs and the members of the Class the true character, quality and nature of the Class Refrigerators, that the Compressor Defect results from poor design and/or failures in the manufacturing process, will require costly repairs, and result in spoiled food and beverages and that leaking water caused by the Compressor Defect may cause damage to kitchen floors, in addition to causing Class members to pay out-of-pocket to repair their Class Refrigerators. As a result of Defendant's active concealment, any and all applicable statutes of limitations applicable to the allegations herein have been tolled.

## **FACTUAL ALLEGATIONS**

### A.     **Defendant's Marketing and Sale of the Class Refrigerators.**

38.     Defendant GE Appliances is the manufacturer, producer, distributor, and seller of numerous home appliances and other electronic products, including refrigerators.

39.     Defendant markets its goods directly to the consumer through its website and nationwide commercial advertisements, and sells its products through leading retailers in the United States, such as Home Depot, Lowes, Sears, Best Buy, and JCPenney, as well as other local retailers as well as through the online retailer, Amazon.com.

40.     Defendant markets its products as the best in quality and dependability when compared with other appliance manufacturers.

41.     For example, the advertisements for Plaintiff Blurton's Class Refrigerator, Model CFE28UP2MS1, tout its cooling ability:



### Fresh expectations

Expect fresh food each time you pull out the full-width, electronic temperature-controlled drawer, complete with LED lighting so every item is easy to find

### Any food, always fresh

From produce to packaged goods, keep any food fresh with TwinChill™ evaporators that create separate climates in the fresh food and freezer sections

Watch Video



42.    Similarly, the advertisements for Plaintiff O'Brien's Class Refrigerator, Model GYE22GMNES, likewise tout its cooling features:

## Turbo Cool and Turbo Freeze settings

An extra boost of cold air restores interior to set temperature for optimum food freshness

43.     Additionally, the advertisements for the Class Refrigerators, specifically Model GTS19KYNRFS, tout its quality and durability:



**#1 in Quality and Dependability**

Among 16-22 cu. ft. refrigerators based on an independent study of property maintenance personnel. Source: The Stevenson Company, 2020—Market research company with over 20 years of experience in the appliance industry

**Dual control**

Separate temperature controls for fresh-food and freezer sections

44.     Defendant further touts the reliability of its compressors in the Class Refrigerators:





45.    Other advertisements for the Class Refrigerators tout their cooling and freezing capabilities:

**Turbo Cool & Freeze**

Designed to optimize food and drink storage conditions, the Turbo Cool Setting, which is accessed through the SmartHQ app, drops the refrigerator's interior temperature to maintain freshness after frequent door

**Dual-Evaporators**

This dual evaporator refrigerator features TwinChill™ evaporator climate zones in the fresh food and freezer sections, which help keep food at optimum freshness

46.    Defendant also provides consumers who purchase the Class Refrigerators with a one-year warranty for "any part" including "all labor and related service to replace the defective part" from the date of the original retail purchase.[2] Additionally, Defendant provides a five-year warranty for certain Profile and Café Model Class Refrigerators, which covers "any part of the sealed refrigerating system (the compressor, condenser, evaporator and all connecting tubing)" including "all labor and related service":[3]

---

[2] https://products-salsify.geappliances.com/image/upload/s--ulx8okrz--/ohe3o0cds0evzhgnuuxl.pdf?_ga=2.212481425.481150519.1706978423-1487924330.1706725997 (last visited March 20, 2024).

[3] *Id.*

| For the Period of: | GE Appliances Will Replace |
|---|---|
| **One Year**<br>From the date of the original purchase | **Any part** of the refrigerator which fails due to a defect in materials or workmanship.<br>During the **limited one-year warranty**, GE Appliances will also provide, **free of charge,** all labor and related service to replace the defective part. |
| **Thirty Days**<br>(Water filter, if included)<br>From the original purchase date of the refrigerator | **Any part** of the water filter cartridge which fails due to a defect in materials or workmanship.<br>During this **limited thirty-day warranty,** GE Appliances will also provide, **free of charge,** a replacement water filter cartridge. |
| **GE PROFILE ™ AND GE CAFÉ™ MODELS** | |
| **Five Years**<br>From the date of the purchase | **Any part** of the sealed refrigerating system (the compressor, condenser, evaporator an all connecting tubing) which fails due to a defect in materials or workmanship.<br>During this **limited five-year sealed refrigerating system warranty,** GE Appliances will also provide, **free of charge,** all labor and related service to replace the defective part in the sealed refrigerating system. |

47.     However, when consumers, including Plaintiffs, experience the Compressor Defect and contact Defendant for repairs, Defendant denies warranty coverage.

48.     In every sale of its Refrigerators, Defendant warrants that the Refrigerators are fit for the ordinary purpose for which such goods are used and are free from defects.

49.     These assertions by Defendant are false because the compressors in the Class Refrigerators were manufactured with an inherent defect that ultimately causes the Class Refrigerators to fail.

50.     Defendant has not disclosed the Compressor Defect to consumers, including Plaintiffs.

**B.  <u>The Compressor Defect and Related Problems</u>**.

51.     The primary purpose of a refrigerator is to cool and freeze food and beverages. Refrigeration occurs by removing hot air from the interior of the unit and expelling it to the exterior, and by passing cold air into the interior compartment.

52.     A critical component of the Class Refrigerators' cooling and freezing functions is the compressor. A compressor works by compressing gaseous refrigerant to increase its pressure and temperature. The pressurized refrigerant gas is passed through coils on the exterior of the refrigerator, where it releases heat and becomes liquid. The liquid refrigerant is then passed

through an expansion valve, which decreases the pressure of the refrigerant. The liquid refrigerant is then passed through coils located on the interior of the refrigerator, where it captures heat from the interior of the refrigerator and causes it to again convert to gas. The refrigerant gas is passed to the compressor and the process repeats itself.

53.     A diagram of this process is set forth below:

# Summary of the 4 steps



54.     If the compressor fails, the refrigerator is unable to perform its primary function of cooling and freezing food and beverages.

55.     The Class Refrigerators suffer from the same Compressor Defect, which invariably causes the Class Refrigerators to cease cooling and/or freezing food. Therefore, the Compressor Defect renders the Class Refrigerators useless and unfit for their intended purpose of cooling and freezing food and beverages.

56.     The Compressor Defect causes Class Refrigerators to become useless and unfit for their intended purpose significantly earlier than their anticipated useful life of at least 10 years.[4]

57.     Defendant did not disclose the Compressor Defect to Plaintiffs or consumers in any of its marketing, and it did not disclose the Compressor Defect to consumers at the point of sale. Instead, it touts the quality and durability of the Class Refrigerators to entice consumers to purchase the Class Refrigerators, which it knows are defective.

58.     The labor costs to diagnose and replace the defective compressors in the Class Defect range from several hundred dollars to more than a thousand dollars. The technicians Defendant dispatches to consumers' homes often require multiple service visits to diagnose and repair a known problem. Thus, consumers are forced to endure long periods without a functioning refrigerator and are forced to pay for repeated service visits.

59.     As a result, consumers are required to: discover and diagnose the Compressor Defect on their own; spend money on parts and/or labor to have compressors replaced in their Class Refrigerators, despite Defendant's warranty; contact Defendant and/or authorized third-party repair servicers and wait an undue amount of time for the necessary repairs; endure Refrigerators that are substantially noisier than they were when they still had the factory-installed compressors; and pay for the installation of replacement compressors that also suffer from the Compressor Defect.

60.     Further, as the Class Refrigerators cease cooling food, frozen items begin to thaw and water leaks from the Refrigerators onto consumers' floors.

C.      **Defendant's Longstanding Knowledge of the Defect.**

---

[4] https://www.consumerreports.org/appliances/refrigerators/buying-guide/#:~:text=(Refrigerators%20should%20last%20roughly%2010%20years.) (last visited March 20, 2024).

61.    Defendant is undeniably aware of the Compressor Defect within the Class Refrigerators, in part because of countless complaints made online at mainstream websites, including on its own website, on Twitter (X), and on its Facebook pages. These complaints, some of which are shown below, evidence Defendant's awareness of the Compressor Defect and the inappropriateness of its failure to address the Compressor Defect in any way:

*Defendant's Website*:



**Compressors are failing on this model**

CD18020

a month ago

Bought this unit in Jan 2023. Beginning of November, freezer stopped working, age came to look at it and needed to replace 3-way valve. Guy didnt tell me that the fridge was going to die any minute too... lost food in freezer and fridge. No sense of urgency to repair. Ordered parts, 2 of the 3 show up, so that pushed repair out another week. Total of 3 weeks without a working fridge. 4 weeks later, freezer isn't cooling again. ge comes out, and at the time, temps are fine, even though he can see in the log that the freezer temps are fluctuating. So he says there is nothing for him to do. Two days later, everything thawed out. GE cant get out here for over a week, so they send a 3rd party repair service. Guy walks in... "oh this is a known issue with this model, compressors are failing left and right, I replace a few a week." He orders parts and tells me that he can't get back for a week to repair it. GE quality is terrible, and it's sad that their own technicians are not given info on existing issues. Sad that you pay $3000 for a terrible product.



## Always broken

**Broken123**

2 months ago

Compressor always broken on this model. DO NOT BUY! Trust me. We purchased 2023 - the original one was broken with a smashed compressor. We had to wait for a new one on backorder which took 2 months. The backordered model worked for a month, then the freezer could not retain a cold temp and has been broken for 5 months with no end in sight. So much food and time wasted on this fridge. Again, the compressor went out, we ordered a replacement compressor and had it installed by the tech just for the compressor to be faulty and completely killed the fridge from working. The compressor needed is back ordered again for 3 months. This is a nightmare.



### Compressor failed after 1 year

**Sad in Tennessee**

a year ago

This refrigerator's compressor has failed after one year , according to my installer this isn't the first time this has happened with this particular model. Can't believe GE knowingly allowed this model to be sold and not recalled. Don't buy you have been warned

❌ No, I do not recommend this product.

**Compressor dead after 18 months.**

_jlt

a day ago

The compressor died after 18 months. I would not recommend this refrigerator. The feedback from GE was that we should have purchased extended warranty. We shouldn't need a warranty for a refrigerator that's less than 2 years old. Not good! Zero stars!

❌ No, I do not recommend this product.



## Don't buy it

**Elizabeth1995**

a month ago

Honestly if I could give this zero stars I would. The compressor went out 14 months after purchasing which apparently isn't new for the newer fridges being pumped with the cheapest material possible. To make matters worse the parts and labor cost just as much as the fridge did. Why this model hasn't had a recall is beyond me. customer service was quite possibly the most unhelpful with the slap in the face offer of 15% discount on parts. Will not be buying GE again from this whole experience and how absolutely unhelpful staff were

❌ No, I do not recommend this product.



## Died after 1 year and 1 week

**BN2023**

2 months ago

Compressor died after 1 year and 1 week of use. GE would not honor the 1 year warranty and was forced to replace it.

❌ No, I do not recommend this product.



**TERRIBLE COMPANY!!!!!**

TOTTALY DISSATISFIED

2 days ago

Refridgerator is terrible!!!! Had it for 2 months and the compressor broke!!! Service tech came diagnosed the problem and then said he had to ORDER the part. How do they not have parts??? So here I am almost a week later waiting for it to get fixed and tech doesn't show up even though the recording said he would be here between 1-5. It,s now 5:35 and I've been on hold for an hour and a half. IF I COULD GET MY MONEY BACK I WOULD!!!! Terrible product and customer service!!!!!!!!!!!



**Compressor failure**

333333

a year ago

we are unhappy with this product. Within just a few months, the compressor failed and now has to be replaced. It takes a while to get the service appointment and replacement compressor. We had water damage to floor and lost food. fortuantley, we had a backup refrigerator we could borrow until the repair is made.

❌ No, I do not recommend this product.



**Teriible Refrigerator**

jlt19971

a month ago

Wow, I'd give a zero rating if possible. The compressor in our brand new 1 1/2 year old refrigerator died today. This is the worst refrigerator we have ever owned. How does a brand new refrigerator die, not even 2 years old and lightly used. I would never recommend GE products. Unfortunately, our house came with all new GE appliances and we hope to get more then 1 1/2 years of service out of the rest of them. What a piece of junk! Do not recommend!

Helpful? 👍 (0) 👎 (0)      Report

| Response from GE Appliances: | 21 days ago |
| --- | --- |

**GE_Appliances**

Hello, We appreciate you taking a moment to get in touch and leave a review. We're sorry to hear that your refrigerator stopped working. We recommend referring to the troubleshooting steps at this link: https://products.geappliances.com/appliance/gea-support-search-content?contentId=21631 If the issue continues, we recommend scheduling an appointment with our factory service and repair team by calling 1-800-432-2737, or by visiting https://www.geappliances.com/ge/service-and-support/service.htm We're confident our service team will be able to provide a resolution. We appreciate your patience. -Charlie@GEAppliances



**Compressor failed at 6 months**

RobG3722

a year ago

Compressor failed at 6 months. Soonest GE can provide a fix is over 3 weeks out, so we're stuck. Won't be buying GE appliances in the future.

❌ No, I do not recommend this product.

**Compressor died in four months, now it is LOUD**

Rod 44

9 months ago

I would never buy another GE refrigerator. I had the refrigerator for four months and the compressor died. Now after the service man replaced the compressor it is ridiculously loud.  Not sure why I have to deal with this with a unit that is less than six month old. Your customer service is horrible.

❌ No, I do not recommend this product.



## 6 months old and hasnt worked for 4 weeks

kristen c

8 months ago

Our refrigerator stopped working. Set up a service appointment. Had to wait 4 days, a part had to be ordered. Took another week for the part to come in. Service person replaced the part and left without even making sure it was working. Had to schedule another service appointment to confirm the compressor is shot. Still dont have a working refrigerator.

Helpful?  👍 (3)  👎 (0)       report

## Refrigerator quit after 3 months

missmyice

a year ago

Compressor not working after 3 month's use. New compressor ordered. It will take many weeks until the refrigerator is opersble. Very difficult situation, but GE will not rrplace our refrigerator under any circumstances.

❌ No, I do not recommend this product.

Helpful?  👍 (0)  👎 (0)       report

*Defendant's Facebook:*



**RJ Gray**

October 11, 2022 · 🌐

···

Friends, I don't know what to do. Please share this to GE and Lowe's Home Improvement and maybe I can get the right set of eyes on this.

We've been without a working fridge for 73 days!! 73!!! With two elementary aged children. I am literally in tears writing this and Facebook removed my first post. I am going to continue to post this because I am doing nothing wrong writing this!!

On February 16th, after purchasing a new home, we spent $2716 at Lowes buying a GE Professional Fridge. My husband wanted to buy an American Brand. Come to find out, GE was bought out by a Chinese company in 2016 and is no longer American, but that is not part of this story.

Less than six months later, the compressor went out. Now, we have two boys and anyone with children know you use your refrigerator, a lot. We immediately contacted GE. We lost over $800 in groceries. On 8/8 GE sent out a repairman who said the refrigerator was not fixable and needed to be replaced.

GE said they would get a second opinion. We waited over a month and called them every single day waiting for hours on the phone and no second opinion came. Instead, parts were ordered (even though no one actually looked at the fridge to see what was wrong with it) that didn't even match the make and model for our fridge and have been sitting inside of our house for two months now. [5]

---

[5]

https://www.facebook.com/rjgray2020/posts/pfbid02pFTZzA4RvCJxUpjYQ6anny2ZdVoPG3E TjQmTP2RZgDRxg3ZibhSkQ6zgY1uCF5yl



**Don DeMatteo**
January 22 at 6:09 PM · 🌐                                    ···

So I bought a GE French Door Refrigerator from Best Buy August 2022.  The unit was delivered October 2022.  The unit stopped working March of 2023.  I called Best Buy and was directed to contact GE for service.  A technician diagnoses the issue as a bad compressor and ordered and installed a new compressor.  The unit stopped cooling again September 2023.  Called GE again and a tech was dispatched to repair the unit again.  The unit stopped cooling again – January 2024.  Called Best Buy who dispatched a tech on Thursday, January 11th.  The tech diagnosed it again as a closed system cooling issue that he wasn't qualified to repair.   A new company was dispatched for an appointment on January 16th.  I received a call on January 15th that they too were not qualified to repair closed cooling systems.  I called Best Buy again asking for a new replacement machine for this clearly bad unit.  I was told that dispatch was looking for a qualified technician to fix the GE refrigerator.  An appointment was scheduled for Monday, January 22nd.  The same GE technician from the first visit came to the house and diagnosed the problem as a bad compressor AGAIN and ordered several new parts including a new compressor.  This unit is 15 months old and has broken 3 times in 10 months.  Each system failure has caused all the food in the refrigerator to spoil.  I have repeatedly asked for a new unit.    [6]

*Defendant's Twitter (X):*



**Kai Armstrong**
@phikai                                                        ···

Hey @GE_Appliances our less than 2 year old Cafe fridge had the compressor go out. We're supposed to have a service tech out today, but we haven't heard a thing... is there any way to actually talk to someone?

3:45 PM · Jan 5, 2024 · **63** Views                            [7]

---

[6] https://www.facebook.com/photo/?fbid=10231233764416213&set=a.1938415108862

[7] https://twitter.com/phikai/status/1743373268038336836



**Eric Freeman**
@Efree87                                                           ···

@GE_Appliances have a Fridge that is less than 2 years old and the compressor is shot. Have had a repair person out twice now to see if it's something else, but still doesnt work. How do you sell brand new appliances with compressors dying within 2 years?

12:54 PM · Jan 20, 2024 · **20** Views                                    [8]



**Doug Rheams**
@DougRheams                                                        ···

@GE_Appliances I sent a direct message as requested but it was no help. The tech came for the third time and still can't fix my refrigerator. A new compressor "is being ordered" but will take 15 more days! How do I get this replaced under warranty as it's less than 4 years old?

6:19 PM · Jan 18, 2024 · **15** Views                                    [9]



**Calvin Heidenwith**
@Heidenwith3                                                       ···

@GE_Appliances brand new fridge stopped working after 1 day. Called on 7/3, technician here for 5 minutes on 7/13 to tell me the compressor is bad, will not be fixed until 8/9. At this point I've tried multiple times to have you just send a new fridge since you sold me a lemon.

1:37 PM · Jul 20, 2023 · **794** Views                                   [10]

62.    Moreover, numerous consumers have complained about the Compressor Defect on the Better Business Bureau, which Defendant monitored. Notably, GE Appliances has 1.05 stars and is the target of thousands of complaints. A sampling of the customer complaints includes:

---

[8] https://twitter.com/Efree87/status/1748765986390487246

[9] https://twitter.com/DougRheams/status/1748122998232715527

[10] https://twitter.com/Heidenwith3/status/1682082236764413952

### Consumer No. 1:

 **Initial Complaint**
08/19/2023

**Complaint Type:** Problems with Product/Service
**Status:** Resolved

I purchased a brand new GE fridge lasted 32 days and compressor went out have been without a fridge for 5 weeks and GE will do nothing about it it is my only fridge and living out of ice chest while my two kids go to school and GE will not even give me a repair date company GE hired sunrise repair LLC out of Greeley Colorado does not return phone calls or provide any information very frustrated want to know my rights apparently I have none when it comes to purchasing a new fridge from GE and GE is not wanting to reimburse me for any of my costs

### Consumer No. 2:

 **Initial Complaint**
07/21/2023

**Complaint Type:** Problems with Product/Service
**Status:** Answered

A $2000 refrigerator died - everything in it was ruined. Purchased Aug 26, 2022. Total loss. I was told by the first repair person scheduled through the GE website/warranty protocol that this was a compressor/computer issue. A total loss. Likened to a car engine needing replacement in a new car. He even said "GE appliances fail out of the box." They told me that they could not repair it and said I needed to call GE. GE decided to send a different repair person. I canceled all my patients (again - I am a physician and actually go to work) and they just didn't show up. I have not had a fridge in a week and the GE consumer relations department says that up to 3 weeks for a part is considered reasonable and they would not consider a replacement otherwise. So a month without a fridge is acceptable to then. Offered me $100 for the spoiled food (laughable - the meat in the freezer cost more than that.) And I could buy the same model for $1200 as a replacement. They are no help.

### Consumer No. 3:

 **Initial Complaint**
06/26/2023

**Complaint Type:** Problems with Product/Service
**Status:** Answered

I purchased a refrigerator at general appliance for 2743.00 Feb 7th 2023. June 2023 refrigerator compressor is out. I am out 2743.00 and no working refrigerator. I had to throw away all my food. Still no refrigerator. I would like a refund and money for the food that I had to throw away.so, I can purchase a different brand of refrigerator. And, the money for the food that I had to throw away. One that will last linger than 4 months. I have made many calls. Going on 2 weeks and no refrigerator. Tech did finally come out still no refrigerator . This refrigerator should have a recall on it as ,I have seen many complaints about it not working. This refrigerator is a lemon. At this point, I just want a different brand not GE.

## Consumer No. 4:



**Initial Complaint**
07/30/2023

**Complaint Type:** Guarantee/Warranty Issues
**Status:** Resolved ✅

This complaint is about a brand new GE Café line refrigerator, which cost $3500. I purchased the fridge for a kitchen renovation in March 2023 and it was installed in April 2023. By June 15, the freezer was failing - after only having been plugged in for a month and a half. I contacted GE for service (as the fridge is under warranty) and they sent technician #1, who said he was not equipped to repair it. A week later, GE sent technician #2, who said the compressor was faulty and the fridge itself would eventually fail along with the freezer- which ended up being true. This technician also said it was not repairable and that the compressor would need to be replaced. We called GE again. At this point, it's June 25. GE scheduled technician #3 to come with a replacement compressor. When the day finally arrives, tech #3 says this type of compressor doesn't work with Café line. GE still refuses to replace the fridge at this point and schedules technician #4 to come on JULY 27. Nearly a month later was the soonest appointment and they swore up and down this would be the one to fix it all. Technician #4 said the interior compartments of the unit had become moldy and that installing the new compressor would be a waste. He recommended replacement immediately and faulted GE for the long wait time for the growth of mold (we have had the refrigerator doors open this whole time). It is now July 30 and we've been without a fridge/freezer since June 15 - in the dead of summer eating solely pantry foods and what little fresh food we can fit in a cooler. I have a 3 year old and it is enormously difficult to live this way. GE is dragging their feet on replacement despite the brand new fridge being under warranty. It's unacceptable to pay $3500 for a top-line refrigerator and be treated with this abysmal level of customer service. I would like the refrigerator replaced, and quickly. My family cannot continue living this way.

## Consumer No. 5:



**Initial Complaint**
04/21/2023

**Complaint Type:** Guarantee/Warranty Issues
**Status:** Answered ✅

We purchased a GE Cafe refrigerator last year delivered in April. This January the compressor stopped working and we without it for almost 3 weeks waiting for parts. Once they repaired the compressor it went out again two days later - again losing the contents of the refrigerator. Since the repair of the compressor the refrigerator makes almost constant noise - where prior to the compressor being replaced it was almost always quiet. I have been informed noise is not a "warranty" issue. The refrigerator is not in the same condition as prior to the repair. In addition to the compressor we have had one of the circuit boards replaced as it was faulty and now have condensation forming on top of the freezer. We have had at least 8 repair calls where we have to take time off work, 2 times to replace the contents of the refrigerator and a constant noise. We have had 3 different case numbers on this device and numerous hours spent on calls with customer relations. This is an unfortunate situation as to date we have been told that there is nothing ore to be done. We have to take off more time from work for yet another repairman for the condensation - however, they are not addressing the unacceptable noise being made by the refrigerator.

## Consumer No. 6:



**Initial Complaint**
11/11/2023

**Complaint Type:** Problems with Product/Service
**Status:** Answered ✅

In August of 2022, my husband and I purchased a General Electric $4199.00 refrigerator on sale for $2136.17 from Lowes which included the purchase of an extended warranty. Before a year was up around July of 2023, the refrigerator wouldn't freeze, make ice or keep food cold enough not to spoil. We called Lowes and was instructed to contact General Electric because it was still under the manufacturers warranty. GE sent a service man out who stated that the compressor was bad. He also stated that the refrigerators with R600A on the back were the ones he replaced the compressors 2 to 3 times a day and that the refrigerators with 134A were the ones with better compressors. Our refrigerator just happened to have R600A on the back. Following his visit, GE was supposed to send another repairman but he never came. We called Lowes and told them we wanted a replacement. The manager at Lowes stated that he couldn't replace it without a replacement authorization number from GE. We talked to numerous customer service people at GE and wrote a letter to corporate (see attached) requesting the same but to no avail to date. After almost 3 months of food spoiling, we went to Lowes and bought another refrigerator. We are very disappointed in the outcome and feel as though we are due a refund from General Electric which will in no way compensate for the run around, spoiled food, and inconvenience experienced with this bad refrigerator. We can't imagine how many people have experienced this especially based on what the repairman stated to us. It's obviously a defective product and this needs to be investigated. We would like your assistance in settling this matter with GE and we thank you in advance for your immediate attention. We may be reached at Email: *********************; Address: **** S. ***** Avenue, Apt. #1; or Phone: ###-###-#### or ###-###-####. Sincerely,

## Consumer No. 7:



**Initial Complaint**
04/06/2023

**Complaint Type:** Problems with Product/Service
**Status:** Answered ✅

I bought a GE French door bottom freezer refrigerator. It's only eight months old and the compressor has went bad. I called GE and have been given nothing but the runaround. They sent someone to fix it however, they could not repair it because they do not have the special tools that it takes to replace the compressor. It's been two weeks and this has not been resolved. I keep calling them and keep getting told Vincent is working on it. I was told I could get a check to buy a temporary fridge and was denied that. I have a family and no refrigerator for milk, eggs or anything else. In today's economy, I cannot afford to eat out with my family every night of the week. I want my refrigerator replaced or fixed.

## Consumer No. 8:



**Initial Complaint**
03/17/2023

**Complaint Type:** Guarantee/Warranty Issues
**Status:** Answered ✅

Bought my GE refrigerator 9 months ago. It completely stopped working. I had to throw hundred's of dollars worth of food away. A repair man finally came and said I would need to wait for a new compressor to be delivered. I've been without a fridge for a month now, waiting to be scheduled for repair. i would like to ask for compensation as I am still making payments or possibly a new refrigerator. i feel really duped..

63.     These are representative examples of the thousands of complaints and/or warranty claims made to Defendant concerning the Compressor Defect.

64.     As a result of the high rate of failure of the Class Refrigerator's compressors, the replacement parts necessary to repair the Compressor Defect are routinely out-of-stock. Thus, consumers are forced to wait long periods of time without a working refrigerator and/or replace the Class Refrigerator.

65.     Despite Defendant's warranties, which purport to cover labor and related services, Plaintiffs and the Class are forced to pay for initial visits by GE's agents as well as for the parts and labor associated with repairs, despite the fact that these repairs often do not cure the Compressor Defect. As a result, Plaintiffs and the Class are damaged because they are forced to undergo the lengthy process of securing an inspection and paying for futile attempts to repair the Compressor Defect. Plaintiffs and the Class are further damaged through the loss of their personal time, loss of work due to service appointments, and the lack of a working refrigerator, while waiting for the repairs to take place.

66.     The warranties (repair and replacement) offered by Defendant's warranty do not cure the Compressor Defect. Consumers spend days, weeks, or months pursuing relief under Defendant's warranty only to be denied coverage, and must pay to receive a replacement compressor that is also defective. Defendant has not developed a suitable remedy for the Compressor Defect. Instead, it continues to advise consumers to replace the defective compressors with equally defective replacement parts. Therefore, the warranty fails of its essential purpose.

67.     Moreover, the warranty Defendant provides for the Class Refrigerators is procedurally and substantively unconscionable. Consumers have no input or bargaining power as to the terms of the warranty. And yet, consumers are bound by a warranty that excludes significant

costs of repair and replacement for a major household appliance manufactured with a known defect.

68.    Defendant is experienced in the design and manufacture of appliances, including refrigerators, and conducts testing on all of its appliances,[11] including pre- and post-release testing on incoming batches of components, including the compressors to be used in its refrigerators. Such tests would be designed to verify that the parts are free from defects and comply with Defendant's specifications. As a result, Defendant knew or should have known that the compressors used in its Class Refrigerators were defective and likely to cause the refrigerators to stop cooling after a short period of time, spoiling consumers' food and beverages as well as costing Plaintiffs and Class members each hundreds of dollars in repairs and replacement costs for spoiled food.

69.    Each of the Class Refrigerators is defectively designed and manufactured with a compressor that fails, preventing the Class Refrigerators from properly cooling food and thus spoiling their food and beverages.

70.    Plaintiffs and Class members have suffered damages as a result of Defendant's deceptive practices, including but not limited to the fact that consumers overpaid for the Class Refrigerators and were forced to pay for parts and repairs and/or to replace the Class Refrigerators.

71.    Plaintiffs and Class members paid thousands of dollars in the promise of a functioning Refrigerator, only to be saddled with a substandard device that fails to perform the basic functions that consumers were promised.

72.    The experiences and complaints of Plaintiffs and the Class collectively demonstrate that Defendant was or should have been aware of customer complaints and experiences concerning

---

[11] https://products.geappliances.com/appliance/gea-support-search-content?contentId=18405 (last visited March 20, 2024).

the Compressor Defect in its Class Refrigerators. Despite this knowledge, however, Defendant failed to implement any changes to cure the Compressor Defect associated with the Class Refrigerators or the way that it markets and sells its refrigerators to consumers. Defendant continues to sell the Class Refrigerators to consumers despite its undeniable knowledge of the Compressor Defect.

73.     Defendant was or should have been aware of the Compressor Defect because its own service technicians, and its third-party authorized service technicians routinely advise customers that the Class Refrigerators suffer from the Compressor Defect and that the Compressor Defect is a "known problem." The Compressor Defect requires the replacement of the compressor, a major repair that most third-party authorized service technicians refuse to perform.

## CLASS ACTION ALLEGATIONS

74.     Plaintiffs bring this action on their own behalf, and on behalf of the following Class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Class consists of the following:

**Nationwide Class:**

All persons in the United States who purchased a Class Refrigerator.

    Or, in the alternative,

**California Class:**

All persons in California who purchased a Class Refrigerator primarily for personal, family or household purposes, as defined by California Civil Code § 1791(a).

    and

**Virginia Class:**

All persons in Virginia who purchased a Class Refrigerator.

75.     Together, the Nationwide Class and the California and/or Virginia Classes shall be collectively referred to herein as the "Class." The California and Virginia Classes shall be referred to as the "State Subclasses." Excluded from the Class are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Class Refrigerators for purposes of resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change or expand the Class definition after conducting discovery.

76.     <u>Numerosity</u>:  The Class is so numerous that joinder of all members is impracticable.  While the exact number and identities of individual members of the Class are unknown at this time, such information being in the possession of Defendant and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe that the Class consists of thousands of persons and entities that were deceived by Defendant's conduct.

77.     <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of fact and law exist as to all members of the Class. These questions predominate over the questions affecting individual Class members.  These common factual and legal questions include, but are not limited to:

  a. whether Defendant misrepresented the quality of the Class Refrigerators;
  b. whether the Class Refrigerators are defective due to the Compressor Defect;
  c. whether Defendant omitted the Compressor Defect from its disclosures to consumers;
  d. whether Defendant's conduct violated the California Unfair Competition Law;
  e. whether Defendant's conduct violated the California False Advertising Law;
  f. whether Defendant's conduct violated the California Consumer Legal Remedies Act;
  g. whether Defendant's conduct violated the Virginia Consumer Protection Act;
  h. whether Defendant breached express warranties under the Magnuson-Moss Warranty Act;
  i. whether Defendant's conduct resulted in unlawful common law fraud;
  j. whether Defendant's conduct resulted in unlawful negligent misrepresentation;
  k. whether Defendant's conduct resulted in it receiving unjust enrichment at the expense of Plaintiffs and the Class;

l.  whether Plaintiffs and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief; and

m.  whether Plaintiffs and the Class are entitled to equitable or injunctive relief.

78.    <u>Typicality</u>:  All of Plaintiffs' claims are typical of the claims of the Class since each Class Refrigerator was advertised with the same false and/or misleading statements, regardless of model or production year. Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendant's wrongful conduct.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

79.    <u>Adequacy</u>:  Plaintiffs are adequate Class representatives because their interests do not materially or irreconcilably conflict with the interests of the Class that they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

80.    <u>Superiority</u>:  A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of

single adjudication, economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, *inter alia*, Defendant's records and databases.

81.     Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

**VIOLATIONS ALLEGED**
**COUNT I**
**VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")**
**(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**
**(On Behalf of the California Class)**

82.     Plaintiffs and the Class re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

83.     California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

84.     Defendant has engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff Blurton and the Class members the Compressor Defect within the Class Refrigerators. Defendant should have disclosed this information because it was in a superior position to know the true facts related to the Compressor Defect within the Refrigerators, and Plaintiff Blurton and Class members could not reasonably be expected to learn or discover the true facts related to the Compressor Defect within the Class Refrigerators.

85.     These acts and practices have deceived Plaintiff Blurton and are likely to deceive

the public. In failing to disclose the Compressor Defect within the Class Refrigerators and suppressing other material facts from Plaintiff Blurton and the Class members, Defendant breached its duties to disclose these facts, violated the UCL, and caused injuries to Plaintiff Blurton and the Class members. The omissions and acts of concealment by Defendant pertained to information that was material to Plaintiff Blurton and the Class members, as it would have been to all reasonable consumers.

86.     The injuries suffered by Plaintiff Blurton and the Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff Blurton and the Class members could have reasonably avoided.

87.     Defendant's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 *et seq.*, and California Commercial Code § 2313.

88.     Plaintiff Blurton seeks to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendant, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

### COUNT II
**VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW**
**(Cal. Bus. & Prof. Code §§ 17500 *et seq.*)**
**(On Behalf of the California Class)**

89.     Plaintiffs and the Class re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

90.     California Business & Professions Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to

be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

91.    Defendant caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiff Blurton and the other Class members.

92.    Defendant has violated California Business & Professions Code § 17500 because the misrepresentations and omissions regarding the functionality of its Class Refrigerators as set forth in this Complaint were material and likely to deceive a reasonable consumer.

93.    Plaintiff Blurton and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices. In purchasing their Class Refrigerators, Plaintiff Blurton and the other Class members relied on the misrepresentations and/or omissions of Defendant with respect to the reliability of the Class Refrigerators. Defendant's representations were untrue because the Refrigerators were manufactured and sold with the Compressor Defect. Had Plaintiff Blurton and the other Class members known this, they would not have purchased their Class Refrigerators and/or paid as much for them. Accordingly, Plaintiff Blurton and the other Class members overpaid for their Refrigerators and did not receive the benefit of their bargain.

94.    All of the wrongful conduct alleged herein occurred in the conduct of Defendant's business.

95.     Plaintiff Blurton and Class members seek actual damages and/or injunctive and equitable relief, attorneys' fees and costs, and to enjoin Defendant on the terms that the Court considers reasonable.

**COUNT III**
**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**("CLRA")**
**(Cal. Civ. Code §§ 1750 *et seq.*)**
**(On Behalf of the California Class)**

96.     Plaintiffs and the Class re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

97.     Defendant GE Appliances is a person as that term is defined in California Civil Code § 1761(c).

98.     Plaintiff Blurton and the Class are "consumers" as that term is defined in California Civil Code § 1761(d).

99.     Defendant engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiff Blurton and Class members that the Class Refrigerators are defective. These acts and practices violate, at a minimum, the following sections of the CLRA:

> (a)(5)   Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;
>
> (a)(7)   Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
>
> (a)(9)   Advertising goods and services with the intent not to sell them as advertised;
>
> (a)(14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve; and

(a)(16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

100.    Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the purchasing public.

101.    Defendant knew that the Class Refrigerators were defective, prone to failing for their essential purpose as refrigerators, and would become useless as a result of reasonable and foreseeable use by consumers.

102.    Defendant was under a duty to Plaintiff Blurton and the Class members to disclose the defective nature of the Class Refrigerators because:

(a) Defendant was in a superior position to know the true state of facts about the Defect in the Class Refrigerators;
(b) Plaintiff Blurton and the Class members could not reasonably have been expected to learn or discover that the Class Refrigerators were defective and not in accordance with Defendant's advertisements and representations;
(c) Defendant knew that Plaintiff Blurton and the Class members could not reasonably have been expected to learn or discover the Defect in the Class Refrigerators; and
(d) Defendant actively concealed and failed to disclose the Defect from Plaintiff Blurton and the Class.

103.    In failing to disclose the Compressor Defect within the Class Refrigerators at the time of sale, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

104.    The facts concealed or not disclosed by Defendant to Plaintiff Blurton and the Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendant's Refrigerators or pay a lesser price. Had Plaintiff Blurton and the Class known about the Compressor Defect in the Class Refrigerators, they would not have purchased the Refrigerators or would have paid less for them.

105.    Plaintiff Blurton has provided Defendant with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a) and currently seeks only injunctive relief. After the 30-day notice period expires, Plaintiff Blurton will amend this complaint to seek monetary damages under the CLRA.

106.    Plaintiff Blurton and the other Class members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

107.    Therefore, Plaintiff Blurton and the other Class members are entitled to equitable relief under the CLRA.

**COUNT IV**
**VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT**
**(Va. Code Ann. § 59.1-196 *et seq.*)**
**(On Behalf of the Virginia Class)**

108.    Plaintiffs and the Class re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

109.    Defendant GE Appliances is a "supplier" as defined in Va. Code Ann. § 59.1-198.

110.    Defendant's acts which are the basis for this lawsuit constitute "consumer transactions" as defined in Va. Code Ann. § 59.1-198.

111.    Defendant engaged in unfair and deceptive acts in violation of the Virginia Consumer Protection Act by the practices described above, and by knowingly and intentionally concealing from Plaintiff O'Brien and Class members that the Class Refrigerators are defective. These acts and practices violate, at a minimum, the following sections of Virginia's Consumer Protection Act:

(A)(5) Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits;

(A)(6)  Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; and

(A)(8)  Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised.

112.    Defendant knew that the Class Refrigerators were defective, prone to failing of their essential purpose as refrigerators, and would become useless as a result of reasonable and foreseeable use by consumers.

113.    Defendant was under a duty to Plaintiff O'Brien and the Class members to disclose the defective nature of the Class Refrigerators because:

    (a)  Defendant was in a superior position to know the true state of facts about the Defect in the Class Refrigerators;
    (b)  Plaintiff O'Brien and the Class members could not reasonably have been expected to learn or discover that the Class Refrigerators were defective and not in accordance with Defendant's advertisements and representations;
    (c)  Defendant knew that Plaintiff O'Brien and the Class members could not reasonably have been expected to learn or discover the Defect in the Class Refrigerators; and
    (d)  Defendant actively concealed and failed to disclose the Defect from Plaintiff O'Brien and the Class.

114.    Defendant actively concealed and failed to disclose the Defect from Plaintiff O'Brien and the Class.

115.    In failing to disclose the Compressor Defect within the Class Refrigerators at the time of sale, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

116.    Plaintiff O'Brien and the other Class members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

117.    Defendant's violations of Virginia's Consumer Protection Act have caused Plaintiff O'Brien and Class members actual damages.

118.    Plaintiff O'Brien and Class members seek actual damages and/or equitable relief,

attorneys' fees and costs, and to enjoin Defendant on the terms that the Court considers reasonable.

<u>COUNT V</u>
**VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT**
**(On Behalf of the Nationwide Class)**

119.    Plaintiffs and the Class re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

120.    Plaintiffs and the Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

121.    Defendant GE Appliances is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

122.    The Class Refrigerators are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

123.    Defendant's warranties are "written warranties" within the meaning of 15 U.S.C. § 2301(6).

124.    Defendant breached its express warranties by refusing and/or failing to honor the express warranties by repairing or replacing the defective compressors free of charge.

125.    Moreover, Defendant's express warranties are unconscionable and fail of their essential purpose. Defendant knew or should have known that the Class Refrigerators would fail shortly after the one-year warranty for "any part" including "all labor and related service" and/or the five-year warranty for certain Profile and Café Model Class Refrigerators for the compressor including "all labor and related service", forcing consumers to pay significant costs for the labor to diagnose and replace the defective compressors in their refrigerators. Plaintiffs and the Class

members had no bargaining power and Defendant concealed or failed to disclose the Compressor Defect to consumers. Thus, Plaintiffs and the Class were forced to accept Defendant's unconscionable warranties, which failed to provide adequate relief for a known defect.

126.    Plaintiffs and the other Class members relied on the existence and length of the express warranties in deciding whether to purchase the Refrigerators.

127.    Defendant's breach of the express warranties has deprived Plaintiffs and Class members of the benefit of their bargain.

128.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

129.    Defendant has been afforded a reasonable opportunity to cure its breach of the written warranties and/or Plaintiffs and the other Class members were not required to do so because providing Defendant a reasonable opportunity to cure its breach of written warranties would have been futile. Defendant was also on notice of the Defect from the complaints and service requests it received from Class members, as well as from its own warranty claims, customer complaint data, and/or parts sales data.

130.    As a direct and proximate cause of Defendant's breach of the written warranties, Plaintiffs and Class members sustained damages and other losses in an amount to be determined at trial. Defendant's conduct damaged Plaintiffs and the other Class members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees, and/or other relief as deemed appropriate.

## COUNT VI
## BREACH OF EXPRESS WARRANTY

**(On Behalf of the State Classes)**

131.    Plaintiffs and the Class re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

132.    Defendant provided all purchasers of the Class Refrigerators with the same express warranties described herein, which became part of the basis of the bargain.

133.    The parts affected by the Compressor Defect were covered by the warranties Defendant provided to all purchasers of Class Refrigerators.

134.    Defendant breached these warranties by selling Class Refrigerators with the Compressor Defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

135.    Plaintiffs notified Defendant of the breach, but Defendant already knew of the Compressor Defect and yet chose to conceal it and failed to comply with its warranty obligations.

136.    As a direct and proximate cause of Defendant's breach, Plaintiffs and the members of the Class bought Class Refrigerators they otherwise would not have, overpaid for their Class Refrigerators, did not receive the benefit of their bargain, and their Class Refrigerators suffered a diminution in value. Plaintiffs and the Class have also incurred and will continue to incur costs related to the diagnosis and repair of the Compressor Defect.

137.    Defendant's attempt to disclaim or limit these express warranties is unconscionable and unenforceable under the circumstances here, as described above.

138.    Plaintiffs have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

**COUNT VII**
**BREACH OF IMPLIED WARRANTY**
**(On Behalf of the State Classes)**

139.    Plaintiffs and the Class re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

140.    Defendant manufactured and distributed the Class Refrigerators throughout the United States for sale to Plaintiffs and the Class.

141.    Defendant impliedly warranted to Plaintiffs and members of the Class that their Class Refrigerators were free of defects and were merchantable and fit for their ordinary purpose for which such goods are used.

142.    As alleged herein, Defendant breached the implied warranty of merchantability because the Class Refrigerators suffered from the Compressor Defect. The Class Refrigerators are therefore defective, unmerchantable, and unfit for their ordinary, intended use or purpose.

143.    After Plaintiffs experienced the Compressor Defect and contacted Defendant and its representatives on multiple occasions without relief, Plaintiffs gave reasonable and adequate notice to Defendant that the Class Refrigerators were defective, unmerchantable, and unfit for their intended use or purpose.

144.    Due to the Compressor Defect, Plaintiffs and the members of each of the Classes are unable to operate their Class Refrigerators as intended, substantially free from defects. The Class Refrigerators are not safe and reliable because they fail of their primary purpose and allow

food and beverages to spoil and become unsafe. As a result, Plaintiffs and members of the Classes are unable to safely use their Class Refrigerators.

145.    Plaintiffs did not receive or otherwise have the opportunity to review, at or before the time of sale, the written warranty containing any purported exclusions and limitations of remedies. Accordingly, any such exclusions and limitations of remedies are unconscionable and unenforceable, and Plaintiffs are entitled to all remedies. Any purported warranty disclaimers, exclusions, and limitations are unconscionable and unenforceable. As a direct and proximate result of the breach of implied warranty of merchantability, Plaintiffs and members of the Classes have been injured in an amount to be proven at trial.

## COUNT VIII
## COMMON LAW FRAUD
### (On Behalf of the State Classes)

146.    Plaintiffs and the Class re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

147.    At all times during its advertising, marketing, and sale of the Class Refrigerators, Defendant made material misstatements of fact to Plaintiffs and Class members regarding the non-defective nature of the compressors in the Class Refrigerators. As a result, Plaintiffs and the Class were fraudulently induced to purchase the Class Refrigerators.

148.    These misstatements made by Defendant were made with knowledge of their falsity, and with the intent that Plaintiffs and members of the Class would rely upon them.

149.    As described herein, Defendant fraudulently sold Refrigerators with defective compressors that effectively prevented purchasers from purchasing the Class Refrigerators without defective compressors.

150.    At the time that Defendant made these misrepresentations and concealments, and at the time that Plaintiffs and Class members purchased the Class Refrigerators, Plaintiffs and the Class were unaware of the falsity of these misrepresentations, and reasonably believed them to be true.

151.    Plaintiffs and Class members did in fact rely upon Defendant's misrepresentations and omissions concerning the non-defective nature of the compressors in the Class Refrigerators.

152.    As a direct and proximate result of Defendant's deceptive, fraudulent, and unfair practices, Plaintiffs and Class members have suffered injury in fact and/or actual damages in an amount to be determined at trial.

**COUNT IX**
**NEGLIGENT MISREPRESENTATION**
**(On Behalf of the State Classes)**

153.    Plaintiffs and the Class re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

154.    Under the circumstances alleged, Defendant owed a duty to Plaintiffs and the Class to provide them with non-defective compressors in their Refrigerators.

155.    Defendant represented to Plaintiffs and Class members that by purchasing the Class Refrigerators, they would be enjoying non-defective Refrigerators, which was not what they received.

156.    Defendant's representations, as described herein, were false, negligent, and material.

157.    Defendant negligently made these misrepresentations with the understanding that Plaintiffs and Class members would rely upon them.

158.    Plaintiffs and Class members did in fact reasonably rely upon these misrepresentations and concealments made by Defendant.

159.    As a direct and proximate result of Defendant's negligent actions, Plaintiffs and Class members have suffered injury in fact and/or actual damages in an amount to be determined at trial.

### COUNT X
### UNJUST ENRICHMENT
**(On Behalf of the Nationwide Class, or Alternatively, the State Classes)**

160.    Plaintiffs and the Class re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

161.    This claim is brought in the alternative to Plaintiffs' contract-based claims.

162.    Plaintiffs and members of the Class conferred a benefit on Defendant by purchasing the Class Refrigerators.

163.    Defendant had knowledge that this benefit was conferred upon it.

164.    Defendant has been unjustly enriched at the expense of Plaintiffs and the Class, and its retention of this benefit under the circumstances would be inequitable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully request that this Court:

A.    Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

B.    Appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

C.    Award all actual, general, special (including treble), incidental, statutory, and consequential damages to which Plaintiffs and Class members are entitled;

D.    Award pre-judgment and post-judgment interest on such monetary relief;

E.    Grant appropriate injunctive and/or declaratory relief;

F.    Award reasonable attorneys' fees and costs; and

G.    Grant such further relief that this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiffs respectfully demand a trial by jury on all issues so triable.

Dated: April 4, 2024

*s/Daniel K. Bryson*
Daniel K. Bryson (KY Bar No. 92232)
**MILBERG COLEMAN BRYSON**
  **PHILLIPS GROSSMAN PLLC**
900 W. Morgan Street
Raleigh, NC 27603
T: 919-600-5000
F: 919-600-5035
dbryson@milberg.com

Gregory F. Coleman*
**MILBERG COLEMAN BRYSON**
  **PHILLIPS GROSSMAN PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080
F: 865-522-0049
gcoleman@milberg.com
*pro hac vice application forthcoming*

Joseph G. Sauder
Joseph B. Kenney
Juliette T. Mogenson
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, Pennsylvania 19312
Telephone: (610) 200-0580
Facsimile: (610) 727-4360
jgs@sstriallawyers.com
jbk@sstriallawyers.com
jtm@sstriallawyers.com

*Counsel for Plaintiffs*