UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:24-CV-00225-GNS

DEBBIE BLURTON et al.                                                    PLAINTIFFS

v.

HAIER US APPLIANCE SOLUTIONS, INC.                            DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss (DN 26).  The motion is ripe for adjudication.

**I.        STATEMENT OF FACTS AND CLAIMS**

Plaintiffs Debbie Blurton ("Blurton"), Travis O'Brien ("O'Brien"), Brian Herndon ("Herndon"), Kevin Lee ("Lee"), and Catherine Pollard ("Pollard") (collectively, "Plaintiffs") purchased refrigerators designed, manufactured, and sold by Defendant Haier US Appliance Solutions, Inc. ("Haier"), doing business as GE Appliances.  (Am. Compl. ¶¶ 1-8).  Plaintiffs allege these refrigerators ("Class Refrigerators") had a faulty design or manufacturing process ("Compressor Defect") that "manifests shortly after purchase and well before the end of the anticipated useful life of the [refrigerators]" and renders the Class Refrigerators unable to cool or prevent the spoilation of food.  (Am. Compl. ¶ 1, 5, 49, 201).

Plaintiffs claim that they purchased the Class Refrigerators due to Haier's representations of "[the Class Refrigerators'] cooling ability" and "reliable cooling performance," highlighted by a "[d]urability tested compressor and interior fan for increased cooling performance and dependable operation."  (Am. Compl. ¶¶ 71-78).  Plaintiffs also allege that Haier provided

consumers of the Class Refrigerator the following warranties: (1) a one-year warranty for "any part" including "all labor and related service to replace the defective part" from the original date of purchase; (2) a five-year warranty for certain "Profile and Café Model Class Refrigerators", covering "'any part of the sealed refrigerating system (the compressor, condenser, evaporator and all connecting tubing)' including 'all labor and related service'"; and (3) for certain Monogram Model fridges, a "twelve (12)-year warranty, which covers 'free of charge, replacement parts for any part of the sealed refrigerating system (the compressor, condenser, evaporator and all connecting tubing) that fails because of a manufacturing defect.'" (Am. Compl. ¶¶ 79-85). Blurton, Lee, Pollard, and Herndon all allege that each purchased Class Refrigerators within the five-year warranty period applicable to their respective refrigerators. (Am. Compl. ¶¶ 1, 12-15, 35, 37-38, 47, 49-50, 57, 59-66). O'Brien's Compressor Defect occurred within two years of his usage, and he had a one-year warranty on the product. (Am. Compl. ¶¶ 21-33).

Plaintiffs base their claims upon graphics, advertisements, and warranties that were featured in product listings on Haier's website. (Am. Compl. ¶¶ 71-85). As a result of the Compressor Defect, Plaintiffs allege that they had to pay for repairs, purchase new refrigerators, and/or lost food and other items to spoilation because of the Compressor Defect and Haier's failure to honor the warranty. (Am. Compl. ¶¶ 1, 11-68, 86-95).

Plaintiffs filed this class action suit, on behalf of themselves and similarly situated individuals who purchased a Class Refrigerator, alleging that Haier manufactured, marketed, designed, promoted, or distributed a defective product and breached the applicable warranties. (Am. Compl. ¶¶ 1, 109). Plaintiffs assert multiple causes of action against Haier, including a federal claim under the Magnuson-Moss Warranty Act ("MMWA"), and various state law claims for breach of express warranty, breach of implied warranty of merchantability, fraud, negligent

misrepresentation, and unjust enrichment. (Am. Compl. ¶¶ 117-221). Plaintiffs bring non-state specific claims as a nationwide class and/or as a "State Class" consisting of those who purchased Class Refrigerators in Arizona, California, North Carolina, Oregon, and Virginia. (Am. Compl. ¶¶ 109-110). Plaintiffs and their respective home states are as follows: Blurton - California; O'Brien - Virginia; Herndon - Arizona; Lee - Oregon; and Pollard - North Carolina. (Am. Compl. ¶¶ 11, 21, 34, 45, 55).[1] Plaintiffs request damages, as well as injunctive and declaratory relief. (Am. Compl. 55-56). Haier has moved to dismiss the Amended Complaint. (Def.'s Mot. Dismiss 1, DN 26).

## II.    JURISDICTION

The Court has subject-matter jurisdiction based upon the Class Action Fairness Act. *See* 28 U.S.C. § 1332(d). Jurisdiction for the federal law claims is based on federal question jurisdiction pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over the state law claims through supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). Venue is proper pursuant to 28 U.S.C. § 1391 because Haier's headquarters is in this district.

## III.    STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P 12(b)(6). When considering a motion to dismiss, "courts must accept as true all material allegations of the complaint[] and must construe the complaint in favor of the complaining party." *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 344 (6th Cir. 2016) (citation omitted). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff

---

[1] The claims in this case clearly implicate choice of law issues. None of the parties fully briefed the choice of law issue, and the Court will not make a determination at this stage.

must allege "enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claim made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561-64).

Fraud or other claims that "sound in fraud" must meet the heightened pleading standard of Fed. R. Civ. P. 9(b), which requires a party to "state with particularity . . . the circumstances constituting fraud or mistake." *Kolominsky v. Root, Inc.*, 100 F.4th 675, 683 (6th Cir. 2024) (internal quotation marks omitted) (internal citation omitted) (quoting Fed. R. Civ. P. 9(b)). In general, that means that the plaintiff must specify (1) "what the fraudulent statements were"; (2) "who made them"; (3) "when and where the statements were made"; and (4) "why the statements were fraudulent." *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 562 (6th Cir. 2013) (citing *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012)). Fed. R. Civ. P. 9(b) "is undoubtedly more demanding than the liberal notice pleading standard which governs most cases." *United States ex rel. SNAPP, Inc. v. Ford Motor Co. (SNAPP I)*, 532 F.3d 496, 503 (6th Cir. 2008) (citation omitted). However, "it should not be read to defeat the general policy of 'simplicity and flexibility' in pleadings contemplated by the Federal Rules." *Id.* (citation omitted). "Rule 9 should be interpreted in harmony with Rule 8's statement that a

4

complaint must only provide 'a short and plain statement of the claim' made by 'simple, concise, and direct allegations." *Id.* (citation omitted).

## IV.    **DISCUSSION**

### A.    **Fed. R. Civ. P. 9(b) and Fraud-Based Claims**

Haier avers that Plaintiffs have not met the pleading standard under Fed. R. Civ. P. 9(b). (Def.'s Mem. Supp. Mot. Dismiss 1, DN 26-1).  Specifically, Haier contends that Plaintiffs have not adequately alleged "particularized facts," reliance, and deficiencies unique to their individual claims.  (Def.'s Mem. Supp. Mot. Dismiss 1-2).  Plaintiffs argue their allegations meet the Rule 9(b) pleading standard.  (Pls.' Resp. Def.'s Mot. Dismiss 2-6, DN 31).

As Haier correctly points out, the claims asserted in Counts I through VI, Count X, and Count XI are subject to Fed. R. Civ. P. 9(b)'s heightened pleading standard.  (Def.'s Mot. Dismiss Ex. A, at 5-7, DN 26); *see Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (applying the Fed. R. Civ. P. 9(b) pleading standard to the plaintiff's California law claims that the defendant misrepresented characteristics of its product); *Republic Bank & Tr.*, 683 F.3d at 248, 253-55 (applying Fed. R. Civ. P. 9(b) to claims of negligent and fraudulent misrepresentation); *Smith v. Bank of Am. Corp.*, 485 F. App'x 749, 754-55 (6th Cir. 2012) (applying Fed. R. Civ. P. 9(b) to an unjust enrichment claim based on misrepresentations); *Martell v. Gen. Motors LLC*, 492 F. Supp. 3d 1131, 1146 (D. Or. 2020) (applying Rule 9(b)'s heightened pleading standard to an Oregon Unlawful Trade Practices Act claim); *Withers v. BMW of N. Am., LLC*, 560 F. Supp. 3d 1010, 1020 (W.D.N.C. 2021) (applying Rule 9(b) to a North Carolina Unfair and Deceptive Trade Practices Act claim) (citation omitted); *Elliott v. Gen. Motors LLC*, 605 F. Supp. 3d 937, 944 (E.D. Mich. 2022) (applying Rule 9(b) to the Virginia Consumer Protection Act).

Blurton, O'Brien, Herndon, and Pollard allege that between October 2018 to June 2024, they each owned a Class Refrigerator, followed Haier's guidance on the product's maintenance, ultimately required repairs to the compressor within the warranty period, and suffered financial harm due to spoiled food or purchasing a different refrigerator. (Am. Compl. ¶¶ 11-68; Pls.' Resp. Def.'s Mot. Dismiss 12-13). They specify who made the representations, when the representations were made, and what representations were fraudulent. (Am. Compl. ¶¶ 11-68; Pls.' Resp. Def.'s Mot. Dismiss 12-13). O'Brien, Herndon, and Pollard allege that they contacted Haier to have their Class Refrigerator repaired, and that Haier either failed to fix the problem, declined to pay for a replacement, or offered inadequate financial compensation for the allegedly faulty product, answering why these representations were fraudulent. (Am. Compl. ¶¶ 28-33, 38-44, 60-66). Plaintiffs also provide online reviews of other users who experienced similar problems with the compressor, giving Haier notice of the problem. (Am. Compl. ¶¶ 96, 107).

Haier contends that Plaintiffs have failed to meet the "particularity" required by Fed. R. Civ. P. 9(b). (Def.'s Mem. Supp. Mot. Dismiss 9-11). Plaintiffs, however, have clearly alleged the substance of Haier's representations, when they were made, and why the statements were false. Haier submits that Plaintiffs do not sufficiently identify a common defect in the Class Refrigerators. (Def.'s Mem. Supp. Mot. Dismiss 6-8). At this stage, however, Plaintiffs need not explain why the compressor is failing across the Class Refrigerators models. (Am. Compl. ¶¶ 86-95; Def.'s Mem. Supp. Mot. Dismiss 6-8). Plaintiffs have identified the *compressor* as the defect within the different models that causes the refrigerator to malfunction; they do not bear the burden of alleging *why* the Compressor Defect occurs. (Def.'s Mem. Supp. Mot. Dismiss 6-8). Haier cites *Stockley v. Nissan of North America, Inc.*, 701 F. Supp. 3d 682 (M.D. Tenn. 2023), which specifically notes that there is a difference between identifying a defect, which is required, versus

fully explaining the defect. *Id.* at 696 ("What matters . . . is whether a product was defective and known to be so, not whether the plaintiffs, defendants, or anyone else can provide a mechanical explanation for why it was defective."). Haier also draws a comparison between complex automobile defects and the Compressor Defect and argues the refrigerator is an analogous, complex mechanism. (Def.'s Mem. Supp. Mot. Dismiss 6-8). Haier offers no explanation how the Class Refrigerators are a "complicated system" like an automobile, or why the alleged Compressor Defect is analogous to automobile defects which violate state and federal emission regulations. (Def.'s Mem. Supp. Mot. Dismiss 6-8; Def.'s Reply Mot. Dismiss 1-4).

Haier argues that Plaintiffs have not alleged facts showing reliance for their fraud-based claims. (Def.'s Mem. Supp. Mot. Dismiss 1-2, 11-12). Courts generally analyze reliance on a factual allegation basis where a plaintiff alleges advertisements, representations, or affirmations of fact that he or she utilized in order to make a purchasing decision. *Orr v. Keystone RV Co.*, 736 F. Supp. 3d 389, 398 (E.D. Va. 2024) (analyzing the nexus between factual allegations and the ultimate consumer transaction for a VCPA claim); *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 559 (N.D. Cal. 2019) (holding that a plaintiff must allege factual allegations that are connected to the ultimate defect or misrepresentation for an Oregon Unlawful Trade Practices Act claim). Under North Carolina law, reliance must be reasonable and is only reasonable when the recipient of the representation "use[s] reasonable care to ascertain the truth of that representation." *Solum v. Certainteed Corp.*, 147 F. Supp. 3d 404, 411 (E.D.N.C. 2015) (citation omitted). Courts analyze California claims based upon the effect on a reasonable consumer to determine whether an advertisement is "misleading." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "Reliance can be proven in a fraudulent omission case by establishing that 'had the omitted information been disclosed, [the plaintiff] would have been aware of it and behaved differently.'"

*Clark v. LG Elecs. U.S.A., Inc.*, No. 13-CV-485 JM JMA, 2013 WL 5816410, at \*6 (S.D. Cal. Oct. 29, 2013) (alteration in original) (citation omitted).  Additionally, reliance may be demonstrated by showing that "the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct."  *Id.* (citation omitted).  An "immediate cause" of the plaintiff's conduct is shown when "the plaintiff 'in all reasonable probability' would not have engaged in the injury-producing conduct[,]" absent the misrepresentation.  *Id.* (citation omitted).  By contrast, vague and unspecified assertions are "mere puffery," which a reasonable consumer may not use as a basis for reliance.  *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 792-94 (N.D. Cal. 2017); *see also Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1133 (N.D. Cal. 2013) ("[T]he common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions.") (citation omitted)).

At this stage, Plaintiffs have sufficiently alleged reliance.  They point to the stickers on the Class Refrigerators advertising their cooling ability, the online graphics and advertisements, the terms of the warranty, and the influence of the warranties on Plaintiffs when they ultimately chose to purchase the Class Refrigerators.  (Am. Compl. ¶¶ 12, 23-24, 46, 56, 73-84).  These representations go beyond mere puffery because they contain specific information and communicate specific warranty terms as well as details and features of the product.  *See In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d at 792-94.  These representations include the refrigerator's rapid cooling features, the duration and coverage of the warranty, and features like the "Turbo Cool & Freeze" and the "Dual-Evaporators" that "optimize food and drink storage conditions" and "keep food at optimum freshness."  (Am. Compl. ¶¶ 12, 22-24, 46, 56, 73-84). Plaintiffs allege that these features and warranties enticed them to make their purchases and assert

they would not have made the purchase if they had known about the defect or the Haier's treatment of the warranty after inspecting them at retailers.  (Am. Compl. ¶¶ 20, 33, 44, 54, 66); *see Clark*, 2013 WL 5816410, at *6 (holding a plaintiff had shown reliance when she purchased a refrigerator because of its ice creation system but would have not made the same purchase had she known of the defect of having to unplug and plug it in to keep it operational).

Haier argues next that Plaintiffs failed to allege Haier knew of the defect before the sale in their fraud-based claims.  (Def.'s Mem. Supp. Mot. Dismiss 12-14).  Pre-sale knowledge is an essential element in all of Plaintiffs' fraud-based claims.  *In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 956 (E.D. Mich. 2022) (holding pre-sale knowledge is a mandatory element in various state fraud-based claims that included California, Oregon, and Virginia) (citation omitted); *Reynolds v. FCA US LLC*, 546 F. Supp. 3d 635, 655 (E.D. Mich. 2021) (applying the pre-sale knowledge analysis to the North Carolina Unfair and Deceptive Trade Practices Act).  A sister court in this Circuit held plaintiffs had plausibly alleged pre-sale knowledge under various state fraud claims when they offered customer complaints, sales data, and testing completed in response to customer complaints.  *In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d 618, 636 (E.D. Mich. 2019).  Plaintiffs have made several allegations plausibly establishing Haier's pre-sale knowledge of the Compressor Defect, including online reviews of other past users who experienced similar problems with the compressors and allegations of contact between consumers and Haier requesting repairs, which would indicate Haier had notice of the problems.  (Am. Compl. ¶¶ 23-32, 28-33, 38-44, 60-66, 107).  Thus, Plaintiffs have sufficiently alleged Haier's pre-sale knowledge based on these allegations.

Plaintiffs have met their burden under the Fed. R. Civ. P. 9(b) heightened standard by identifying by whom the misrepresentations were made and when, the nature of the

misrepresentations, and why the representations were misleading or false. *Morris Aviation, LLC*, 536 F. App'x at 562. They also have properly alleged reliance, pre-sale knowledge, and causation under Fed. R. Civ. P. 9(b) for their fraud-based claims.

Haier also raises arguments as to each of Plaintiffs' individual claims, each of which will be addressed in turn.

**B.    State Law Statutory Claims**

    **1.    *California State Law Claims***

Blurton asserts claims under the California Unfair Competition Law ("UCL"), California False Advertising Law ("CFAL"), and the California Consumers Legal Remedies Act ("CLRA") on behalf of herself and "[a]ll persons in California who purchased a Class Refrigerator primarily for personal, family or household purposes, as defined by Cal. Civ. Code § 1791(a) ('California Class'")." (Am. Compl. ¶¶ 109, 117-142). The UCL prohibits an entity from engaging in any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200. Under the UCL, "a plaintiff must show either an (1) 'unlawful, unfair, or fraudulent business act or practice,' or (2) 'unfair, deceptive, untrue or misleading advertising.'" *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003) (quoting Cal. Bus. & Prof. Code § 17200). A plaintiff must establish that the practice is unlawful under one of three prongs: "(1) unlawful (i.e., is forbidden by law), (2) unfair (i.e., harm to victim outweighs any benefit) or (3) fraudulent (i.e., is likely to deceive members of the public)." *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1198 (N.D. Cal. 2016).

The same standard for fraudulent activity governs the UCL, CFAL, and CLRA, so courts often analyze the three statutes together. *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017) (citations omitted). The CFAL bars a business from engaging in advertising

"which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."  Cal. Bus. & Prof. Code § 17500.  The CLRA serves to "protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."  Cal. Civ. Code § 1760; *see also* Cal. Civ. Code § 1770 (listing the proscribed practices under the CFAL).

Blurton and the California Class claim Haier engaged in unfair competition, unlawful and unfair business practices, and other violations of California law.  (Am. Compl. ¶¶ 117-142).  Haier counters that these three California state law claims fail because Blurton and the California Class have failed to show reliance, pre-sale knowledge, a duty to disclose, and inadequate legal remedies.  (Def.'s Mot. Dismiss Ex. A, at 5-7; Def.'s Mem. Supp. Mot. Dismiss 12-16; Am. Compl. ¶¶ 28-33, 38-44, 60-66).

The UCL, CLRA, and CFAL provide for equitable relief.  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 n.2 (9th Cir. 2020); *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 n.13 (9th Cir. 2020); *In re Natera Prenatal Testing Litig.*, 664 F. Supp. 3d 995, 1012 (N.D. Cal. 2023).  "It is well-established that claims for relief under the [CFAL] and the UCL are limited to restitution and injunctive relief."  *Roffman v. Rebbl, Inc.*, 653 F. Supp. 3d 723, 731 (N.D. Cal. 2023) (citation omitted).  The CLRA permits equitable relief and damages.  *Castillo v. Prime Hydration LLC*, 748 F. Supp. 3d 757, 773 (N.D. Cal. 2024).  California courts have recognized injunctive relief and restitution under the UCL and disgorgement under the CFAL as equitable relief.  *Lair v. Bank of Am., N.A.*, No. 5:23-CV-1345-WLH-SHK, 2024 WL 943945, at *5 (C.D. Cal. Jan. 26, 2024)

Blurton and the California Class request the Court "enjoin further unlawful, unfair and/or fraudulent acts or practices[,] . . . obtain restitutionary disgorgement of all monies and revenues

generated as a result of such practices, and all other relief allowed injunctive relief" under the UCL; "actual damages and/or injunctive and equitable relief, attorneys' fees and costs" under the CFAL; and "monetary and injunctive relief " under the CLRA. (Am. Compl. ¶¶ 123, 130, 140). Haier's argument for the dismissal of the California state law claims is that Blurton and the California Class have failed to allege there are inadequate legal remedies for purely equitable claims under these California laws. (Def.'s Mem. Supp. Mot. Dismiss 14-16). Blurton and the California Class contend the Court should wait until discovery is completed to make this determination. (Pls.' Resp. Def.'s Mot. Dismiss 11-12). Courts have recognized, however, that plaintiffs who lack an adequate remedy at law must at least allege that the available legal remedies are insufficient in order to bring their claims for equitable relief under the UCL, CFAL, and CLRA. *Sonner*, 971 F.3d at 844; *see In re Natera Prenatal Testing Litig.*, 664 F. Supp. 3d at 1012 (applying *Sonner* to a CFAL). In their Amended Complaint, Blurton and the California Class do not claim that available legal remedies are insufficient, nor do they argue in their response such insufficient remedies. (Pls.' Resp. Def.'s Mot. Dismiss 11-12). They also request damages under the CFAL when California courts have recognized the only available remedies are either restitution or injunctive relief. *See Roffman*, 653 F. Supp. 3d at 731 (citation omitted). Though courts have treated the requirements of *Sonner* differently at the pleading stage, the plaintiffs in those cases alleged they had inadequate remedies at law; in this case, Blurton and the California Class have not plead that they lack an adequate remedy at law. *See, e.g.*, *In re Natera Prenatal Testing Litig.*, 664 F. Supp. 3d at 1012.

Blurton and the California Class's claim under the CLRA for damages may proceed, so the Court must address whether they have alleged Haier had a duty to disclose as required by the CLRA. *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 WL 2486353, at *7 (N.D. Cal.

June 16, 2010) (citations omitted).  As discussed with respect to the sufficiency of the pleadings under Fed. R. Civ. P. 9(b), Blurton and the California Class have sufficiently alleged reliance and pre-sale knowledge, but Haier argues that it never had a duty to disclose the alleged defect.  (Def.'s Mem. Supp. Mot. Dismiss 14-16).  Under California law, a duty to disclose exists if: "(1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts."  *Baba*, 2010 WL 2486353, at *3 (citations omitted).

Blurton and the California Class specifically allege the Compressor Defect was material and central to the refrigerator's function of cooling food.  (Am. Compl. ¶¶ 5, 15, 26, 37, 49, 52, 59, 70).  Blurton and the California Class also claim that Haier had "exclusive knowledge" through being "experienced in the design and manufacture of appliances," and Haier "knew or should have known that the compressors used in its Class Refrigerators were defective and likely to cause the refrigerators to stop cooling after a short period of time."  (Am. Compl. ¶¶ 99, 103, 108).  These allegations would plausibly support Haier's "exclusive knowledge" of these material defects. Blurton and the California Class have sufficiently alleged a duty existed.

Accordingly, Blurton and the California Class have not pleaded an actionable claim under the UCL, CFAL, and CLRA, regarding their California state statutory claims seeking equitable relief which must be dismissed.  They may proceed on their claim for damages under the CLRA. (Am. Compl. ¶ 140).

### 2.    *Virginia Consumer Protection Act ("VCPA")*

O'Brien has brought a claim against Haier for a violation of the Virginia Consumer Protection Act ("VCPA") under Va. Code § 59.1-196 on behalf of himself and "[a]ll persons in

Virginia who purchased a Class Refrigerator ('Virginia Class')." (Am. Compl. ¶¶ 109, 143-153). To state a claim under the VCPA, a plaintiff must allege "(1) fraud, (2) by a supplier, (3) in a consumer transaction." *Nahigian v. Juno Loudoun, LLC*, 684 F. Supp. 2d 731, 741 (E.D. Va. 2010) (citing Va. Code § 59.1-200(A); *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 43, 456 (E.D. Va. 2009)).

Haier argues it did not have a duty to disclose the defect. (Def.'s Mem. Supp. Mot. Dismiss 14-16). Under Virginia law, a duty of disclosure occurs:

> (1) if the fact is material and the one concealing has superior knowledge and knows the other is acting upon the assumption that the fact does not exist; (2) if one party takes actions which divert the other party from making prudent investigations (e.g., by making a partial disclosure) but [o]bviously, the concealment itself cannot constitute one of these diversionary actions—then there would always be a duty to disclose; or (3) if some fiduciary or confidential relationship . . . exist[s] between the parties."

*Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 971 n.19 (E.D. Ky. 2019) (alterations in original) (internal quotation marks omitted) (internal citation omitted) (citation omitted) (applying a duty to disclose analysis to a VCPA claim). O'Brien and the Virginia Class allege Haier had a duty to disclose because of its superior knowledge of the product and its mechanisms. (Am. Compl. ¶¶ 5, 15, 26, 37, 49, 52, 59, 70).

Haier contends that the VCPA does not permit class action suits because the statute only authorizes an "individual action." (Def.'s Mem. Supp. Mot. Dismiss 17-18). O'Brien and the Virginia Class respond that Fed. R. Civ. P. 23 overrides this rule as a procedural, rather than a substantive, mechanism. (Pls.' Resp. Def.'s Mot. Dismiss 12). They are correct. Fed. R. Civ. P. 23 controls this issue because it "unambiguously authorizes *any* plaintiff, in *any* federal civil proceeding, to maintain a class action if the Rule's prerequisites are met." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 406 (2010). Fed. R. Civ. P. 23

14

overrides the VCPA because it is a state law that attempts "to answer the same question—i.e., it states that [Plaintiffs'] suit may *not* be maintained as a class action"—it is preempted and cannot apply in this federal case. *Id.* at 399 (internal quotation marks omitted). Other courts in this Circuit have reached the same conclusion when analyzing the issue under the VCPA. *See Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 3d 555, 574 (M.D. Tenn. 2020); *Milisits v. FCA US LLC*, No. 20-CV-11578, 2021 WL 3145704, at *12 (E.D. Mich. July 26, 2021). Haier's motion to dismiss the VCPA claim is denied.

### 3.    *Oregon Unlawful Trade Practices Act ("OUTPA")*

Haier next argues that it did not have a duty to disclose the defect under the Oregon Unlawful Trade Practices Act ("OUTPA") claim brought by Lee on behalf of himself and "[a]ll persons in Oregon who purchased a Class Refrigerator ('Oregon Class')." (Def.'s Mem. Supp. Mot. Dismiss 14-16 (citing Or. Rev. Stat. § 646.605); Am. Compl. ¶ 109). Under the OUTPA, a plaintiff must allege: "(1) the defendant committed an unlawful trade practice; (2) plaintiff suffered an ascertainable loss of money or property; and (3) plaintiff's injury (ascertainable loss) was the result of the unlawful trade practice." *Pearson v. Philip Morris, Inc.*, 361 P.3d 3, 28 (Or. 2015). When fraud is based on silence or nondisclosure, a party must demonstrate that the defendant either: "(1) remained silent when [it] had a duty to speak[;] or (2) assumed the obligation to make a full and fair disclosure of the whole truth by making a representation in the nature of a 'half-truth.'" *Benson Tower Condo. Owners Ass'n v. Victaulic Co*., 22 F. Supp. 3d 1126, 1132 (D. Or. 2014) (internal footnote omitted) (citation omitted). A duty to disclose arises when there is a special relationship between a plaintiff and a defendant. *Gardner v. First Escrow Corp.*, 696 P.2d 1172, 1175-76 (Or. Ct. App. 1985). When there is an existing special relationship, the defendant must disclose to the plaintiff all material matters known to the defendant. *See Gebrayel v. Transamerica Title Ins. Co.*,

888 P.2d 83, 89-90 (Or. Ct. App. 1995). A special relationship exists when the plaintiff has authorized the defendant to exercise independent judgment on the plaintiff's behalf and the defendant has accepted this responsibility. *Bennett v. Farmers Ins. Co. of Or.*, 26 P.3d 785, 798-800 (Or. 2001). Although special relationship does not exist in an "arm's-length" commercial or business relationship, a duty to disclose can arise when one party conceals information that is crucial to the other party's decision to enter into a transaction. *See Ivie v. Mission Rock Residential LLC*, No. 3:21-CV-01122-SB, 2022 WL 2612215, at *13 (D. Or. May 27, 2022) ("[H]alf-truths give rise to an affirmative obligation to disclose the whole truth regardless of the parties' relationship." (citation omitted)).

Plaintiffs have properly alleged that Haier had a duty to disclose based on its superior knowledge and omission of the information regarding the Compressor Defect under Oregon law. (Am. Compl. ¶¶ 23-32, 28-33, 38-44, 60-66, 107).

### 4.  *North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA")*

As with the other state claims, Haier argues it did not have a duty to disclose the defect under North Carolina law with respect to Pollard's claim under North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") on behalf of herself and "[a]ll persons in North Carolina who purchased a Class Refrigerator ('North Carolina Class')." (Def.'s Mem. Supp. Mot. Dismiss 12-16; Am. Compl. ¶ 109). To raise a NCUDTPA claim based upon deception and fraudulent statements, plaintiffs must allege "'actual reliance' on a misrepresentation and that such reliance was the proximate cause of the injury." *Cross v. Ciox Health, LLC*, 438 F. Supp. 3d 572, 584 (E.D.N.C. 2020) (citations omitted). When an NCUDTPA claim is based on "failure to disclose a material fact, there must have been a duty to speak or the party accused of fraud must have taken steps to actively conceal facts." *Withers*, 560 F. Supp. 3d at 1020 (citation omitted).

16

A duty to speak arises when: "(1) there is a fiduciary relationship; (2) a party has taken affirmative steps to conceal material facts from the other; or (3) one party has knowledge of a latent defect . . . about which the other party is both ignorant and unable to discover through reasonable diligence." *Id.* (internal quotation marks omitted) (citation omitted).

Pollard and the North Carolina Class have met their burden maintaining that Haier had knowledge of a material fact as to the Compressor Defect and had a duty to disclose it under North Carolina law.  (Am. Compl. ¶¶ 23-32, 28-33, 38-44, 60-66, 107).  Pollard and the North Carolina Class plead Haier's expertise and online reviews of other past users who experienced a similar problem with the compressor, and interactions arising from the Compressor Defect between themselves and Haier.  (Am. Compl. ¶¶ 23-32, 28-33, 38-44, 60-66, 107).  Pollard and the North Carolina Class also allege they provided Haier with notice of the violations on July 11, 2024.  (Am. Compl. ¶ 166).  Thus, Pollard and the North Carolina Class have sufficiently alleged Haier's knowledge based on the allegations of the reviews and customer contact about the Compressor Defect.  Haier's motion to dismiss the NCUTDPA claim is denied.

## C.    **Breach of Express Warranty Claims**

### 1.    *Arizona Warranty Claims*

Under Arizona law, a plaintiff may bring an express warranty claim when there is a breach of "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." *Arvizu v. Medtronic Inc.*, 41 F. Supp. 3d 783, 793 (D. Ariz. 2014) (citation omitted).  A purchaser relies on these facts or promises when the purchaser has seen the representation before purchasing the product. *Jones v. Lubrizol Advanced Materials, Inc.*, 559 F. Supp. 3d 569, 623 (N.D. Ohio 2021).  This "affirmation that forms the basis of an

express warranty" must exist between the seller and buyer." *Ramirez v. Medtronic Inc.*, 961 F. Supp. 2d 977, 1001 (D. Ariz. 2013). This express warranty may originate from an advertisement. *Id.* (citations omitted).

Herndon brings this claim and other state claims on behalf of himself and "[a]ll persons in Arizona who purchased a Class Refrigerator ('Arizona Class'" )." (Am. Compl. ¶ 109). These Plaintiffs allegedly relied on the online graphics and advertisements, the terms of the warranty, and the influence of the warranties on the Plaintiffs when they chose to make the purchase. (Am. Compl. ¶¶ 12, 23-24, 46, 56, 73-84). They also claim they had to pay out of pocket and/or were denied reimbursement for necessary repairs , and that Haier failed to perform these repairs within a reasonable period of time. (Am. Compl. ¶¶ 11-68, 86-95). Herndon has alleged the existence of the Compressor Defect, and that the need for subsequent repairs occurred during the express warranty period for the Arizona Class Refrigerators. (Am. Compl. ¶¶ 1, 12-15, 35, 37-38, 47, 49-50, 57, 59-66). For these reasons, Haier's motion to dismiss Herndon and the Arizona Class's express warranty claims is denied.

### 2. *California Warranty Claims*

Under California law, "[A] plaintiff must allege: (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty which proximately caused plaintiff's injury." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 987 (N.D. Cal. 2009) (citation omitted). Like other states, a plaintiff shows reliance when he or she make allegations to having read, seen, or relied upon a seller's representations. *Id.* at 988 (citation omitted).

Blurton and the California Class have sufficiently alleged these elements and their reliance on Haier's representations. (*See* Am. Compl. ¶¶ 1, 12-15, 35, 37-38, 47, 49-50, 56-57, 59-66, 73-

84).  For these reasons, Haier's motion to dismiss the express warranty claims under California state law is denied.

### 3.      *North Carolina Warranty Claims*

Under North Carolina law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain . . . ." *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 620 (M.D.N.C. 2006) (citation omitted).  The seller need not use formal language or have a specific intent; the only necessary component is "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." *Id.*  (quoting N.C. Gen. Stat. § 25-2-313).  "[A] seller is bound by an express warranty when, and only when, it is made to induce a sale and does induce such sale." *Hollenbeck v. Ramset Fasteners, Inc.*, 148 S.E.2d 287, 289 (N.C. 1966).  At the pleadings stage, a plaintiff only needs to allege he or she "reasonably relied on [d]efendants' representations and warranties regarding the quality, durability, and other material characteristics . . . ." *Bussian*, 411 F. Supp. 2d at 621 (citation omitted).

Pollard and the North Carolina Class have sufficiently alleged the elements required under North Carolina law and that they relied on Haier's representations and inducement.  (*See* Am. Compl. ¶¶ 1, 12-15, 35, 37-38, 47, 49-50, 56-57, 59-66, 73-84).  They have met the requirement at the pleading stage.  *See Bussian*, 411 F. Supp. 2d at 621 (citation omitted).  Therefore, Haier's motion to dismiss the express warranty claims under North Carolina law is denied.

### 4.      *Oregon Warranty Claims*

To state a claim of a breach of an express warranty under Oregon law, a plaintiff must allege:  "(1) 'there [was] [] an affirmation of fact or description of goods by the seller[,]' and (2) "that factual affirmation or description [was] [] the 'basis of the bargain.'" *Torch v. Windsor Surry*

*Co.*, No. 3:17-CV-00918-AA, 2019 WL 6709379, at *10 (D. Or. Dec. 9, 2019) (citation omitted). Oregon courts have held that reliance is "the sort of conflict in the evidence that plaintiff is entitled to have a jury resolve." *Id.* With respect to the fraud-based claims and the Fed. R. Civ. P. 9(b) discussion, Lee and the Oregon Class have sufficiently met these elements and stated a claim under Oregon law. (*See* Am. Compl. ¶¶ 1, 12-15, 35, 37-38, 47, 49-50, 56-57, 59-66, 73-84). Haier's motion to dismiss the Oregon express warranty claims is denied.

### 5.   *Unconscionability*

Haier seeks dismissal of Plaintiffs' claims for breach of an express warranty under various state laws. The warranties at issue are Haier's product warranties from the time of purchase, which Plaintiffs allege Haier declined to honor. (Am. Compl. ¶¶ 79-85). Haier argues there was no common defect; the Plaintiffs, except for Herndon, have failed to properly allege reliance on the warranty; and the Plaintiffs, except for O'Brien, have shown a breach within the express warranty period. (Def.'s Mot. Dismiss Ex. A, at 5-7).

O'Brien does not deny the Compressor Defect occurred beyond the warranty period applicable to his purchased refrigerator, but argues the warranty is unconscionable. (Am. Compl. ¶ 102; Pls.' Resp. Def.'s Mot. Dismiss 14-15). O'Brien raises an unconscionability argument as a defense to the expiration of the warranty period for his express warranty claim, and the other Plaintiffs also allege unconscionability. (Am. Compl. ¶¶ 102, 182, 194, 202-285; Pls.' Resp. Def.'s Mot. Dismiss 14). "Unconscionability is ultimately a question of law for the court." *In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d at 628-29 (citation omitted). "A plaintiff must allege both substantive and procedural unconscionability when claiming a breach of warranty based on the theory of unconscionability." *Id.* (citation omitted). An agreement is substantively unconscionable when "its provisions are so outrageously unfair as to shock the

judicial conscious[,]" and a court assesses procedurally unconscionability by examining the bargaining power of each party, the market, and available alternatives. *Id.* (citations omitted) (examining various state laws on unconscionability).

The court in *In re General Motors* dismissed a similar unconscionability argument in a multi-state class action suit against an air conditioning manufacturer. *See id.* at 628-30. The court held the warranty was not unconscionable where a plaintiff entered a competitive market with many alternatives and there was merely a difference, rather than a drastic imbalance, in bargaining power. *Id.* at 629-30 (citation omitted). The court held that general allegations of the seller's knowledge and conclusory statements alleging unconscionability were insufficient to sustain the allegations of substantive and procedural unconscionability. *Id.*

Plaintiffs allege only that Defendant had pre-sale knowledge and that Plaintiffs had diminished bargaining power in the relevant market. (Am. Compl. ¶¶ 182, 194, 202). These conclusory allegations are insufficient to sustain an unconscionability claim. Accordingly, Haier's motion to dismiss is granted as to O'Brien and the Virginia Class's breach of express warranty claim.

### D.    Breach of Implied Warranty of Merchantability

The U.C.C. provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind" and that, in order to be "merchantable," goods "must be at least such as . . . are fit for the ordinary purposes for which such goods are used." U.C.C. § 2-314(1), (2)(c). Most states have adopted the language the Uniform Commercial Code ("U.C.C.") for providing a cause of action for a claim of implied warranty of merchantability. U.C.C. § 2-314; *see* Ariz. Rev. Stat. Ann. §§ 47-2314, 47-2315, 47-2a212 (codifying implied warranty of merchantability under Arizona law); Cal. Com. Code §§

2314-2315 (codifying implied warranty of merchantability under California law); N.C. Gen. Stat. Ann. §§ 25-2-314 to 25-2-315 (codifying implied warranty of merchantability under North Carolina law); Or. Rev. Stat. Ann. §§ 72.3140-72.3150 (codifying implied warranty of merchantability under Oregon law); Va. Code Ann. §§ 8.2-314 to 8.2-315 (codifying implied warranty of merchantability under Virginia law).

Haier seeks dismissal of Plaintiffs' claims of breach of an implied warranty of merchantability arising under various state laws. Haier raises many of the same arguments already addressed in the fraud-based claims analysis but also argues Plaintiffs have not sufficiently pled breach of any implied warranty, privity between Haier and Plaintiffs, and lack of merchantability.[2] (Def.'s Mot. Dismiss Ex. A, at 5-7; Def.'s Mem. Supp. Mot. Dismiss 23-24).

### 1. *California Merchantability Claim*

Under California law, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314. California requires a showing of privity in order to state a claim of a breach of an implied warranty. *Hawkins v. Shimano N. Am. Bicycle Inc.*, 729 F. Supp. 3d 989, 1026 (C.D. Cal. 2024) ("[T]he Ninth Circuit has held that a consumer 'who buys from a retailer is not in privity with a manufacturer.'" (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008))). California law recognizes an exception where a plaintiff may plead an implied warranty claim when he or she is a third-party beneficiary to a contract. *Id.* at 1026-27 (citation omitted). This exception also extends to a consumer who alleges that he or she was the ultimate beneficiary of an agreement between a retailer and the original seller. *Id.* (citation omitted).

---

[2] Herndon's claim is time barred under Arizona law. (Def.'s Mot. Dismiss Ex. A, at 5-7; Def.'s Mem. Supp. Mot. Dismiss 23-24). Plaintiffs have voluntarily dismissed Herndon's claim. (Pls.' Resp. Def.'s Mot. Dismiss 24 n.16).

As noted earlier, Blurton and the California Class have properly alleged that the Class Refrigerators were unmerchantable, and that the warranty was breached. They further claim they had to pay for necessary repairs, and that the Class Refrigerators were unable to cool food properly because of the Compressor Defect. (Am. Compl. ¶¶ 1, 12, 23-24, 46, 56, 73-84, 86-95, 199). Blurton and the California Class plead that Haier made an implied warranty to them that the Class Refrigerators were suitable for cold storage of food when they purchased these products from retailers or directly from Haier's website. (Am. Compl. ¶¶ 79-85, 196-202). The Compressor Defect interfered with the refrigerator's main purpose of cooling and preserving food, rendering them unmerchantable based on these allegations, which go directly to the "ordinary purpose[]" for which the product serves. (Am. Compl. ¶¶ 12, 23-24, 46, 56, 73-84); *see* U.C.C. § 2-314(1), (2)(c). Plaintiffs have properly alleged this portion of their implied warranty of merchantability claim.

Blurton and the California Class, however, do not allege there was a contract between themselves and Haier, nor that they were third-party beneficiaries to an agreement between Haier and the retailer. (*See* Pls.' Resp. Def.'s Mot. Dismiss 19-20). They do not allege the existence of any contract between Haier and the retailer, or that they were the intended ultimate beneficiary of the "original purchaser." (*See* Pls.' Resp. Def.'s Mot. Dismiss 19-20). Because Blurton and the California Class have not pleaded facts to support privity, their claim must be dismissed. Haier's motion is granted as to Blurton and the California Class's claim for breach of an implied warranty of merchantability.

### 2. *North Carolina Merchantability Claim*

North Carolina has also incorporated the language of the U.C.C. into its statute governing implied warranties of merchantability. *See* N.C. Gen. Stat. Ann. §§ 25-2-314, 25-2-315. Like California, North Carolina also requires privity to state a claim of a breach of an implied warranty.

*Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 678 (E.D. Mich. 2020) ("Similarly, under . . . and North Carolina law, the lack of privity is fatal to implied warranty claims." (citations omitted)).

Pollard and the North Carolina Class have properly alleged unmerchantability, breach of the warranty, and frustration of the product's ordinary purpose but do not allege privity. (Am. Compl. ¶¶ 1, 12, 23-24, 46, 56, 73-84, 86-95, 196-202); *see* U.C.C. § 2-314(1), (2)(c). This is "fatal" to their implied warranty of merchantability claim. Haier's motion is granted as to the claim under North Carolina law.

### 3.    *Oregon Merchantability Claim*

Oregon law utilizes the same language in its implied warranty statute and permits a claim for an implied warranty to proceed by a consumer in the "distributive chain" of a product. *Crawford v. FCA US LLC*, No. 2:20-CV-12341, 2021 WL 3603342, at *7 (E.D. Mich. Aug. 13, 2021); *see* Or. Rev. Stat. Ann. §§ 72.3140, 72.3150. Lee and the Oregon Class have alleged that they were in this "distributive chain" as the ultimate users of the Class Refrigerators. (Pls.' Resp. Def.'s Mot. Dismiss 19-20; Am. Compl. ¶¶ 1, 12, 23-24, 46, 56, 73-84, 86-95, 199). An implied warranty claim under Oregon law has no requirement of privity. *In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d at 981 (citations omitted). Haier's motion to dismiss Lee and the Oregon Class's breach of implied warranty of merchantability claim is denied.

### 4.    *Virginia Merchantability Claim*

Under Virginia law, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." *Simpson*, 397 F. Supp. 3d at 968 (citation omitted); *see* Va. Code Ann. §§ 8.2-314, 8.2-315. For goods to be merchantable, they must, in relevant part:

> (1) pass without objection in the trade under the contract description; (2) be of fair average quality within the description; (3) be fit for the ordinary purposes for which such goods are used; and (4) conform to the promises or affirmations of fact made on the container or label if any."

*Id.* (internal quotation marks omitted) (citations omitted). The implied warranty of merchantability "runs from the seller to the purchaser and then through the purchaser to the ultimate user." *Id.* (citation omitted). A motion to dismiss for failure to allege privity should be denied under Virginia law, where a plaintiff is alleged to be the ultimate user. *Simpson*, 397 F. Supp. 3d at 969 (citation omitted). Accordingly, Haier's motion to dismiss as to the breach of implied warranty of merchantability claims of O'Brien and the Virginia Class are denied.

**E.    MMWA**

The MMWA "provides a federal cause of action for consumers who are damaged by a failure to comply under a state warranty; MMWA claims therefore 'stand or fall' with valid state law warranty claims." *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257, 1285 (E.D. Mich. 2021) (citation omitted). "[A]ny Plaintiffs that have viable state law warranty claims will also have viable MMWA claims." *In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d at 982; *see also Bennett v. CMH Homes, Inc.*, 770 F.3d 511, 512 n.1 (6th Cir. 2014) (applying the MMWA to implied and explicit warranty claims). Under the MMWA, "[no] claim shall be cognizable" where it is brought as a class action in a district court and contains fewer than one hundred named plaintiffs. 15 U.S.C. § 2310(d)(3). The Sixth Circuit has held, however, that a district court may exercise jurisdiction under the Class Action Fairness Act, "notwithstanding the MMWA's jurisdictional limitations." *Kuns v. Ford Motor Co.*, 543 F. App'x 572, 574 (6th Cir. 2013).

Haier asserts that Plaintiffs' MMWA claims fail because they are derivative of the state law express warranty claims and lack the required number of plaintiffs. (Def.'s Mot. Dismiss ¶ 14; Def.'s Mem. Supp. Mot. Dismiss 1-2, 23-24). Plaintiffs respond they should be allowed to

proceed on their MMWA claims where the court has jurisdiction over the case under the Class Action Fairness Act as in *Kuns*. (Pls.' Resp. Def.'s Mot. Dismiss 21-22); *see Kuns*, 543 F. App'x at 574. Consistent with *Kuns*, Haier's motion is denied as to the MMWA claim.

### F.      Common Law Fraud

Haier seeks dismissal of Plaintiffs' claims for common law fraud, arguing that Plaintiffs have failed to plausibly allege reliance, pre-sale knowledge, a defect, or that Haier had an obligation to disclose. (Def.'s Mot. Dismiss Ex. A, at 5-7). With respect to the analysis of the fraud-based claims and state-specific statutes, Plaintiffs have properly alleged common law fraud and Haier's duty to disclose. Plaintiffs have pleaded Haier's prior knowledge and the manifestation of the Compressor Defect despite the advertisements touting the Class Refrigerators' cooling ability. (Am. Compl. ¶¶ 5, 15, 26, 37, 49, 52, 59, 70-85). Haier's motion to dismiss the common law fraud claims is denied.

### G.      Negligent Misrepresentation and Economic Loss Rule

The economic loss rule ("ELR") "prevents the commercial purchaser of a product from suing in tort to recover for economic losses arising from the malfunction of the product itself, recognizing that such damages must be recovered, if at all, pursuant to contract law." *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 733 (Ky. 2011). A sister court has recognized Kentucky's doctrine is like that of other states where a consumer may not use a tort claim to recover only economic damages. *Chapman*, 531 F. Supp. 3d at 1292 n.21. The Kentucky Supreme Court has held "the economic loss rule applies to a negligent misrepresentation claim just as it does to negligence and strict product liability claims." *Giddings & Lewis*, 348 S.W.3d at 746.

### 1. *Arizona ELR*

Arizona has allowed tort recovery in the products liability context where a plaintiff alleges only economic losses, applying a fact intensive inquiry on whether the facts favor applying tort, commercial law, or a combination thereof. *Est. of Pilgrim v. Gen. Motors LLC*, 596 F. Supp. 3d 808, 827-28 (E.D. Mich. 2022); *In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d at 966. Courts have held that this fact-intensive inquiry does not require dismissal at the pleading stage and have allowed these claims to proceed to discovery. *Id.* Accordingly, the Court denies Haier's motion with respect to the Arizona claims.

### 2. *California ELR*

Economic loss consists of "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property." *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 272 (Cal. 2004) (internal quotation marks omitted) (citation omitted). Recent cases illustrate the exception to the doctrine under California law only extends to claims of affirmative misrepresentation. *See Chapman*, 531 F. Supp. 3d at 1297 (citations omitted). Blurton and the California Class include an allegation that Haier "represented . . . they would be enjoying non-defective Refrigerators" which appears to be an affirmative misrepresentation as to the condition and quality of the compressor. (Am. Compl. ¶¶ 210-216). Accordingly, Haier's motion to dismiss as to this claim under California law is denied.

### 3. *North Carolina ELR*

North Carolina's economic loss rule bars a negligence action by the purchaser of a defective product where "the only damage sustained is damage to the product itself, deemed 'economic loss.'" *Jones v. Caterpillar, Inc.*, No. 16-00331, 2017 WL 4865537, at *3 (E.D.N.C. July 11,

2017) (citing *Wilson v. Dryvit Sys., Inc.*, 206 F. Supp. 2d 749, 753 (E.D.N.C. 2002)); *see also Wilson*, 206 F. Supp. 2d at 753 ("North Carolina has adopted the economic loss rule, which prohibits the purchaser of a defective product from bringing a negligence action against the manufacturer or seller of that product to recover purely economic losses sustained as a result of that product's failure to perform as expected." (citations omitted)).  The rule does not, however, bar claims sounding in fraud.  *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582, 592 (E.D. Mich. 2018) (citations omitted).  North Carolina also has not applied the economic loss rule as a bar to "fraud[-] based claims when a plaintiff alleges fraudulent inducement or that the defendant violated an extrinsic duty."  *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765 (JLL), 2017 WL 1902160, at *18 (D.N.J. May 8, 2017) (citations omitted).

In this instance, Plaintiffs have alleged the Compressor Defect caused damage to the Class Refrigerator and the Compressor Defect led to the spoilation of food.  (Am. Compl. ¶¶ 1, 11-68, 86-95).  Because Plaintiffs have alleged more than just damage to the product, Haier's motion to dismiss the North Carolina claims is denied.

### 4.    *Oregon ELR*

Oregon bars the recovery of purely economic loss in a negligence setting except when there is a special duty of care beyond the common law duty of exercising reasonable care.  *Univ. of Or. v. Drummer*, No. 6:15-CV-00260-AA, 2015 WL 7015316, at *2 (D. Or. Nov. 10, 2015) (citations omitted).  This Court already concluded that Plaintiffs have properly alleged that Haier owed a special duty of care.  *See Ivie*, 2022 WL 2612215, at *13.  At this stage, it would be premature to dismiss the Oregon claims on this basis.  Haier's motion is denied.

     **5.**    ***Virginia ELR***

"For a negligent misrepresentation claim to avoid the economic loss rule, the duty allegedly violated must exist in law, not under an agreement shared amongst the parties" under Virginia law. *4D-Enters., LLC v. Aalto Hyperbaric Oxygen, Inc.*, No. 119CV01504AJTIDD, 2020 WL 13200492, at *4 (E.D. Va. May 22, 2020). Furthermore, the economic loss rule will not bar negligence claims that allege more than just economic injuries. *Lyman v. Ford Motor Co.*, No. 21-10024, 2023 WL 2667736, at *7 (E.D. Mich. Mar. 28, 2023) (citation omitted). Because Plaintiffs properly alleged that Haier owed a duty of disclosure and O'Brien and the Virginia Class have alleged the Compressor Defect led to the spoilation of food, Haier's motion is denied. (Am. Compl. ¶¶ 1, 11-68, 86-95).

    **H.**    <u>**Unjust Enrichment**</u>

The Amended Complaint also alleges claims for unjust enrichment. As a sister court has noted:

> Courts faced with multi-state unjust enrichment claims have recognized that, "although the particular elements of unjust enrichment vary from jurisdiction to jurisdiction, when stripped to its essence, a claim of unjust enrichment requires [Plaintiffs] to allege sufficient facts to show that Defendants received a benefit and under the circumstances of the case, retention of the benefit would be unjust."

*In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, No. 1:14-MD-2508, 2015 WL 5166014, at *35 (E.D. Tenn. June 24, 2015) (internal quotation marks omitted) (citations omitted).

Plaintiffs assert claims for unjust enrichment on behalf of the Nationwide Class, or alternatively, on behalf of the State Classes. (Am. Compl. ¶¶ 217-221). Haier argues that these claims should be dismissed as duplicative, is not an available equitable remedy, and Plaintiffs do not allege a direct benefit to Haier. (Def.'s Mem. Supp. Mot. Dismiss 24-25;). Plaintiffs counter that their unjust enrichment claims are plead as an alternative theory, based on a different set of

facts giving rise to the cause of action, and a direct benefit of Haier profiting of the sale of a Class Refrigerator is the only threshold to state a claim. (Pls.' Resp. Def.'s Mot. Dismiss 23-24).

### 1. *Arizona Unjust Enrichment*

Under Arizona law, "[u]njust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485, 491 (Ariz. Ct. App. 2002). A plaintiff must allege "an enrichment, an impoverishment, a connection between the enrichment and impoverishment, the absence of justification for the enrichment and the impoverishment, and the absence of a legal remedy." *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1016-17 (E.D. Mich. 2014) (citation omitted). Courts have held Arizona does not require a direct benefit showing. *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1089 (S.D. Cal. 2017) ("Accordingly, the Court concludes that Arizona does not require a showing of direct benefit . . . ."). Arizona courts have declined to dismiss unjust enrichment claims at the pleading stage since a plaintiff may plead alternative remedies. *See In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2014 WL 2993753, at *27 (E.D. Mich. July 3, 2014). Arizona courts have held that whether an adequate legal remedy exists depends on whether there is a contract that governs the parties' relationship; in the absence of such, courts have allowed a plaintiff to plead in the alternative. *Id.* (citations omitted). Arizona courts have also noted that the crucial inquiry is whether a plaintiff can link its harm to the defendant's benefit, not whether the burden is directly conferred to the defendant. *In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 869, 897 (E.D. Mich. 2014) (citing various state laws when assessing the question of whether an unjust enrichment claim requires an unjust benefit).

Here, Herndon and the Arizona Class have alleged the required elements. They have alleged that Haier profited from consumers, like Herndon and the Arizona Class, while having knowledge of the Compressor Defect. (Am. Compl. ¶¶ 217-221). Haier's motion is denied.

### 2.    *California Unjust Enrichment*

California law does not recognize an unjust enrichment claim as a "standalone claim." *Norman v. FCA US, LLC,* 696 F. Supp. 3d 359, 389 (E.D. Mich. 2023) (citation omitted); *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d at 1016-17 (citations omitted); *In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, 2015 WL 5166014, at *35-36 (internal quotation marks omitted) (citations omitted). Haier's motion as to an unjust enrichment claim under California law is therefore granted.

### 3.    *North Carolina Unjust Enrichment*

To state an unjust enrichment claim under North Carolina law, "the benefit conferred must be conferred directly from plaintiff to defendant, not through a third party." *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d at 1025-26 (citation omitted). "[A] plaintiff must show three elements: (1) plaintiff conferred a measurable benefit to defendant, (2) defendant knowingly and voluntarily accepted the benefit, and (3) the benefit was not given gratuitously." *TSC Rsch., LLC v. Bayer Chems. Corp.*, 552 F. Supp. 2d 534, 540 (M.D.N.C. 2008) (citations omitted). An unjust enrichment claim can only exist when there is no existing, "enforceable, express contract." *Id.* (citations omitted).

Pollard and the North Carolina Class allege they purchased their Class Refrigerators from retailers, not directly from Haier. (Am. Compl. ¶¶ 13, 24, 35, 47, 57). Because these allegations are insufficient to state this claim, the motion to dismiss is granted.

### 4.    *Oregon Unjust Enrichment*

Under Oregon law, if the parties' relationship is governed by contract, a claim of unjust enrichment fails.  *See High v. Davis*, 584 P.2d 725, 736 (Or. 1978).  Such a claim may proceed where the parties were not in a contractual relationship.  *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d at 1026-27.  Because the Oregon Class have not pleaded a direct contract with Haier, the motion to dismiss the unjust enrichment claim under Oregon law is denied.

### 5.    *Virginia Unjust Enrichment*

Under Virginia law, for unjust enrichment a claim must establish:  "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit and should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value."  *LCF Grp., Inc. v. Piedmont Power Sports, Inc.*, 688 F. Supp. 3d 323, 330 (W.D. Va. 2023) (citations omitted).  An indirect benefit or a benefit to a third party will not sustain an unjust enrichment claim.  *See, e.g.*, *Tao of Sys. Integration v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 576 (E.D. Va. 2004) ("To bring an action to recover monies received by the defendant from a third party, a plaintiff must demonstrate that he had a preexisting right to that fund." (citations omitted)).  Courts have held that purchasing a product from a retailer and not the defendant is insufficient to confer a benefit as required by Virginia law.  *Simpson*, 397 F. Supp. 3d at 974 (citation omitted) (noting the parallels between Kentucky and Virginia law and applying an identical analysis to both unjust enrichment claims).

O'Brien alleges he purchased a Class Refrigerator from a retailer, not Haier.  (Am. Compl. ¶¶ 13, 24, 35, 47, 57).  Haier's motion is therefore granted as to the Virginia unjust enrichment claim.

## I.    **Injunctive Relief**

Haier says injunctive relief is not available to Plaintiffs because they lack standing since they failed to show "concrete harm." (Def.'s Mem. Supp. Mot. Dismiss 25).[3]  To obtain injunctive relief, Plaintiffs must show that they are under a threat that is "actual and imminent, not conjectural or hypothetical . . . ." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citation omitted). Plaintiffs may not rely merely on "past exposure to illegal conduct" to establish standing. *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 491 (6th Cir. 2017).  Ongoing harm is not too speculative to infer that unrealized harm might come to pass. *Chapman*, 531 F. Supp. 3d at 1274.  This standing for injunctive relief on based upon a plaintiff's products liability claim for a vehicle's defective fuel pump has been allowed past a motion to dismiss on the basis that their vehicles could experience catastrophic damage at any time.  *Id*.

Blurton and the California Class request injunctive relief under the California claims, which have been dismissed, but the other Plaintiffs and the respective State Classes also request the Court "[g]rant appropriate injunctive and/or declaratory relief . . . ." (Am. Compl. 56; *see also* Am. Compl. ¶¶ 112, 116, 130, 140).  Plaintiffs have alleged the Compressor Defect has led to the spoilation of food, and prevented them from using their refrigerator because of the Compressor Defect, hardly catastrophic consequences.  (Am. Compl. ¶¶ 11-68); *Chapman*, 531 F. Supp. 3d at 1274.  Given than injunctive relief is not a "claim" but a potential remedy, Haier's motion to dismiss this "claim" is denied.  *See FCA US LLC v. Bullock*, 446 F. Supp. 3d 201, 207 (E.D. Mich. 2020).

---

[3] Plaintiffs have also requested declaratory relief in addition to damages, but Defendant has only moved to dismiss Plaintiffs' injunctive relief.

## V. <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint (DN 26) is **GRANTED IN PART** and **DENIED IN PART**. Blurton and the California Class's UCL, CFAL, and CLRA claims for equitable relief (Counts I, II, III) are dismissed. Blurton and the California Class's CLRA claim for damages remains. O'Brien and the Virginia Class's breach of express warranty claim (Count VIII) is dismissed. The claims asserted by Herndon, Blurton, Pollard, and the respective State Classes for breach of implied warranty of merchantability (Count IX) are dismissed. Finally, the unjust enrichment claims (Count XII) asserted by Pollard and the North Carolina Class, O'Brien and the Virginia Class, and Blurton and the California Class are dismissed.

Greg N. Stivers, Chief Judge
United States District Court

March 27, 2025

cc:    counsel of record

34